**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
CASE NO.: 1:22-cv-20201-DPG

BANCOR GROUP INC., and STITCHING
PARTICULIER FONDS FRANEKER,
derivatively on behalf of EASTERN
NATIONAL BANK, N.A.,

    Plaintiffs,

v.

GABINA RODRIGUEZ, LOUIS FERREIRA,
CESAR A. GOMEZ VALERO, KEITH PARKER,
CARLOS RODRIGUEZ, and GUSTAVO MACIAS,

    Defendants.
_____/

## DEFENDANTS' MOTION TO DISMISS THE VERIFIED COMPLAINT

    Defendants Gabina Rodriguez, Louis Ferreira, Keith Parker, Carlos Rodriguez, and Gustavo Macias (collectively, the "Defendants"), by and through undersigned counsel, pursuant to Federal Rule of Civil Procedure Rule 23.1, Rule 12(b)(6), and Local Rule 7.1, respectfully request the entry of an Order dismissing Plaintiffs' Verified Complaint (the "Complaint" or "Compl."), [ECF No. 1], for failure to meet the pleading requirements of a derivative suit and failure to state a claim, and in support Defendants state as follows:

## PRELIMINARY STATEMENT

    This action is a derivative claim filed by two minority shareholders of Eastern National Bank, N.A. (the "Bank"). Plaintiffs own in the aggregate 85 shares of stock in the Bank (which represents less than 1% of the issued shares). Plaintiffs allege in the Complaint that Defendants, current and former directors of the Bank, breached their fiduciary duties to the Bank. In general, Plaintiffs claim the Defendants breached their duties to the Bank by: (i) failing to comply with a 2020

Consent Order imposed by the Bank's regulator, (ii) allowing the Bank to be managed and controlled by the Government of Venezuela through their recognition of the Bank's 99% shareholder Mercorp, N.V. ("Mercorp"), and (iii) approving an equity incentive plan for Bank directors, officers and employees which provided no value to the Bank's shareholders.

The Complaint should be dismissed for the following reasons: (1) Plaintiff's pre-suit demand on the Bank's Board of Directors (the "Board") was fatally flawed and insufficient; (2) the Complaint does not make adequate allegations regarding the demand under or Florida law; (3) the Complaint does not state a claim for breach of fiduciary duty of care (Count I) or fiduciary duty of loyalty and good faith (Count II) under Florida law; and (4) the business judgment rule bars Plaintiffs' claims.

## LEGAL STANDARD

### (a) Motion to Dismiss

In reviewing a motion to dismiss, a court must accept the allegations in the complaint as true and "must construe the facts alleged in the light most favorable to the plaintiff." *Hunnings v. Texaco*, Inc., 29 F.3d 1480, 1484 (11th Cir. 1994). While the Federal Rules of Civil Procedure require "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* Thus, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do." *Id.* The complaint must "plead [] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**(b) Derivative Actions Contain Heightened Pleading Standards**

Fed. R. Civ. P. 9(c) ("In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed."). But derivative action demands have a higher pleading standard. Fed. R. Civ. P. 23.1; *Staehr v. Alm*, 269 F. App'x 888, 891 (11th Cir. 2008).

Rule 23.1 requires a plaintiff to "state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b)(3). This rule imposes a heightened pleading standard with respect to pre-suit demand efforts, and requires that a plaintiff fairly and adequately represent the interests of the other shareholders.

The substantive aspect of demand futility is governed by applicable state law, and thus determinations of when a demand will be excused are evaluated according to the law of the state in which the company is incorporated. *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 98-109 (1991). Since Florida courts have turned to Delaware for guidance, Delaware case law is also relevant. *First American Bank and Trust v. Frogel*, 726 F. Supp. 1292 (S.D. Fla. 1999).

**I.     The Plaintiffs Failed to Meet the Prerequisite to Filing Suit**

Plaintiffs' Complaint must be dismissed as Plaintiffs failed to satisfy the conditions precedent to filing a derivative action under the requisite Florida statute. In Florida, the shareholder demand requirement is codified by Fla. Stat. § 607.0742. The verified complaint must specify with **particularity** the demand made to the Bank's board of directors and allege that the demand was disregarded or rejected. *See id*. (emphasis added).

Here, Plaintiffs' Complaint is wholly inadequate to maintain a derivative action. First, Plaintiffs have not served a demand upon the board of directors, pursuant to Fla. Stat. 617.07402 and Rule 23.1. Plaintiffs are required to, but admittedly failed to, make a proper demand on the Board prior to initiating the instant derivative action. Compl. at ¶ 104 ("additional pre-suit demand to take remedial measures was not sent to the ENB Board, as such demand would no doubt be ignored").

The Complaint alleges that after the issuance of the 2018 Consent Order the Plaintiffs' "asked to meet with the Defendants and [Bank]'s management for the purpose of addressing these issues, but these requests were denied," Compl., at ¶ 27, [Plaintiffs] have made past demands on Defendants…but Defendants have taken no action." First, it is not plausible that the Plaintiffs asked to meet with all the Defendants because not all Defendants were on the Board at that time. And, a request to simply meet, without more, is insufficient.

These allegations fail to meet the heightened pleading standard for a derivative action – with *particularity*. The Complaint fails to identify when the letter was sent, who it was addressed to, the contents of the letter, and the aggrieved conduct. Plaintiffs copy and paste the same allegation that a request to meet with the Defendants was made in 2020. *See* Compl. at ¶ 38. However, Plaintiffs provide no particularized allegation or support that a request was made.

It appears that Plaintiffs' attempt to rely on the written demand dated June 9, 2021 for the inspection of documents to satisfy the prerequisite to filing suit; however, such reliance is improper. As stated in the Complaint, the demand was solely a request for documents (which is not the context or alleged misconduct in this action) which resulted in a separate lawsuit that was settled by the parties. That suit cannot be used as a basis to circumvent the pleading requirements.

The Plaintiffs also point to a letter dated December 20, 2021 to Mr. Ferreira (which is not attached to the Complaint). Even without the benefit of review, Plaintiffs initiated this lawsuit less than a month after that letter was sent.

Since Florida courts have turned to Delaware for guidance, Delaware case law is relevant. *First American Bank and Trust v. Frogel*, 726 F. Supp. 1292 (S.D. Fla. 1999). The adequacy of the demand is determined on a case by case basis. *Allison v. General Motors Corp.*, 604 F. Supp. 1106, 1117 (D. Del. 1985) (internal citation omitted). The demand should be articulated with enough specificity to provide directors with a fair opportunity to investigate and potentially initiate the action requested. *Bender v. Schwartz*, 172 Md. App. 648, 669; 917 A.2d 142, 154 (Md. App. 2007) (applying Delaware law). The demand "must be more than pro forma; the plaintiff must make a serious request upon the board and specify the nature of the activity in question." *Smachlo v. Birkelo*, 576 F. Supp. 1439, 1443 (D. Del. 1983). Therefore, the demand is meant to be particular and should identify the shareholder bringing the demand, the alleged wrongdoers, the factual basis of the wrongful acts, the harm caused to the corporation and request remedial relief. *Id.*, at 1444; *Allison*, 604 F. Supp. at 1117.

The *Smachlo* Court dismissed the derivative lawsuit because (1) the letter sent to the board failed to identify the shareholder making the demand and (2) it was unreasonable for the plaintiff to demand the board file suit within two weeks of the date of the letter. *Id.* at 1444-1445. The *Smachlo* Court also pointed out that Plaintiff failed to respond to the board's request for more information, and this hindered the purpose of the demand requirement. *Id.* at 1444. *Smachlo* states that a proper demand requires that the Plaintiff identify the shareholder bringing the demand. This is not a technical procedural requirement, but rather serves a very important purpose of ensuring that the board considers all possible intercorporate remedies before suit can be filed. *Id.*

The Complaint references that the purported letter refers to "arbitrary and unjust action" in removing Juan Santaella and Juan B Santaella. Compl. ¶ at 99. Without more, that does not sufficiently meet the pre-suit demand requirements. Similarly, the Court should take into consideration that the letter was sent on the eve of the holidays, and suit was filed shortly after the start of the year. Plaintiffs allegation that "a demand would no doubt be ignored" is a clear omission of any particularized allegations - which is a fatal pleading deficiency in a derivative action.

Consequently, Plaintiff's Complaint is insufficient because Plaintiffs admittedly have not served the proper demand to the Board, which would allow the Board to properly, and within reasonable time, investigate Plaintiffs' claims as intended by the Florida Legislature. Should Plaintiffs be allowed to pursue this action, which is derivative in nature, without complying with the statutory requirements to bring such an action, it would effectively contravene the purpose of the derivative action statute, which is to allow the Board the opportunity to investigate the complaint, determine whether or not to maintain the action itself, and ultimately, reduce costs to the parties and courts.

As a last resort Plaintiffs further allege later in the Complaint that a demand for action would be futile. To support this assertion, Plaintiffs' allegation that a demand would be futile, on grounds that the board of directors stands to benefit for the RSU Plan "as compensation for their loyalty to Gabina Rodriguez and the Venezuelan Government," will not save the Complaint from dismissal. Compl. at ¶101. *See King v. Baldino*, 648 F. Supp. 2d 609, 614, 619(D. Del. 2009).

Florida Courts have also considered Delaware law instructive to demonstrate demand futility. *In re Mako Surgical Corp. Derivative Litig.*, 12-61238-CIV, 2013 WL 12131315, at *4 (S.D. Fla. June 6, 2013) (granting motion to dismiss for failure to allege demand futility where plaintiff's complaint "fails to provide any particularized facts regarding the Audit Committee's

involvement" in the challenged action "or any facts demonstrating that the Audit Committee was aware" of the challenged action); *Story v. Kang*, No. 8:04-cv-1587-T-23TBM, 2006 U.S. Dist. LEXIS 4354, at *5–11 (M.D. Fla. Jan. 20, 2006)(dismissing for failure to allege demand futility under Delaware law because, "by failing to allege facts sufficient to raise a reasonable doubt as to [the individual board member's] independence or disinterestedness as a board member, the plaintiff fails to allege that a majority (four of six) of [the] board of directors are incapable of impartially considering the demand").

Even taking into consideration Plaintiffs broadly unsupported suggestion that the a majority of these directors were interested or lacked independence due "loyalty" – which the Complaint fails to supports, the Complaint must be dismissed. To meet the pleading requirements, Plaintiffs would have to sufficiently demonstrate that a demand would be futile because (i) Mercorp dominated and controlled the Board; (ii) the Board would be unwilling to subject themselves to potential liability; and (iii) the Board lacked independence because of various financial, employment and business relationships with Mercorp, its affiliated companies and Ms. Rodriguez. Plaintiffs fail to do so with particularity. The Complaint makes a logic misstep by alleging that a majority shareholders ownership interest and ability to make final decisions on behalf of the Bank weakens the Board's ability to remain impartial. The Plaintiffs' and Board's ability to resolve a previous dispute sufficiently cuts against such allegation.

Based on the foregoing, and as demonstrated in Defendants' Motion to Dismiss, Plaintiffs failed to make a pre-suit demand and have not pleaded with sufficient particularity why such a demand would have been futile. "Failure to make a demand or to show why a demand would be futile means dismissal." *McDowell v. Bracken*, 794 F. App'x 910, 913 (11th Cir. 2019) (citations omitted).

Indisputably, Plaintiffs' allegations (or lack of allegations) do not meet Rule 23.1 or statutory heightened pleading standards and do not meet the requirement to plead facts specific to each individual director. Consequently, Plaintiffs failed to sufficiently plead demand futility. Therefore, given the (1) underlying policy supporting pre-suit demands, (2) the heightened pleading requirements under Rule 23.1(b)(3); (3) the controlling standard under Delaware law—which is routinely applied by Florida courts faced with this issue; and (4) the lack of particularized support regarding Plaintiffs' position that such a demand would be futile – this Court must dismiss this action for Plaintiffs' failure to comply with the pleadings requirements.

## II.     The Complaint Fails to Meet the Minimum Pleading Requirements of Federal Law

Even if the Court determines that Plaintiffs have satisfied the heightened pleading standard for derivative actions, the Complaint still fails as a matter of law. Plaintiffs impermissibly seek relief from all Defendants collectively without specifying which conduct each Defendant is responsible for and what damages they is seeking from which Defendants. Basically, Plaintiffs' Complaint is a textbook "shot gun pleading."

"By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, the [ ] Complaint fails to satisfy the minimum standard of Rule 8." *Lane v. Capital Acquisitions & Mgmt., Co.*, No. 04–60602 CIV, 2006 WL 4590705, at *5 (S.D. Fla. Apr. 14, 2006); *Petrovic v. Princess Cruise Lines, Ltd.*, No. 12-21588-CIV, 2012 WL 3026368, *3 (S.D. Fla. July 20, 2012) ("a complaint that lumps all the defendants together in each claim and provides no factual basis to distinguish their conduct fails to satisfy Rule 8").

Courts have routinely found that commingling various claims against all defendants together warrants dismissal of a complaint. Plaintiffs' Complaint asserts multiple claims, and conduct, against multiple Defendants without specifying which of the Defendants is responsible for which acts or omissions, or which of the Defendants the claim is brought against. This pleading

8

deficiency warrants dismissal. *See, e.g., Weiland v. Palm Beach County Sheriff's Office*, 792 F. 3d 1313, 1323 (11th Cir. 2015). *Estate of Bass v. Regions Bank, Inc.*, 947 F. 3d 1352, 1358 (11th Cir. 2020); *Anderson v. District Bd. of Trustees of Cent. Florida*, 77 F. 3d 364, 367 (11th Cir. 1966)(holding that "experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice"); *Magluta v. Samples*, 256 F. 3d 1282, 1284 (11th Cir. 2001) (remanding for re-pleading a complaint that was "replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged, though geographic and temporal realities [made it] plain that all of the defendants could not have participated in every act complained of"); *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F. 3d 162, 164 (11th Cir. 1997)(describing a complaint that "offered vague and conclusory factual allegations in an effort to support a multiplicity of discrimination claims leveled against 15 defendants" as a "prototypical 'shotgun complaint'").

      Here, the Plaintiffs place a laundry list of alleged improper actions against all Defendants based on their date of service on the Board. The allegations listed are conclusory, unfounded, and do not include specific conduct by each Defendant. For example, the Complaint states "Defendants…breached their duty of care in multiple ways, in 2018, including the following…" Compl. at ¶ 107. The mere fact that a Defendant served on the Board during the time the alleged improper conduct occurred is, alone, an insufficient basis to plead that the Board member is responsible, or liable, for such action. The Defendants' roles, responsibilities, and conduct relating to the Bank differ and cannot be lumped together in each claim. By way of another example, Defendant Mr. Parker has served on the Board since 2005 while Mr. Ferreira is CEO and President of the Bank since 2020 – and has only served on the Board since 2019. Compl. at ¶¶ 6, 8. Because

the Complaint fails to give each Defendant adequate notice of the misconduct with which each is charged, it should be dismissed. *See Pro Image Installers, Inc.,* 2009 WL 112953, at *1 (noting that dismissal is appropriate for a violation of Rule 8).

### III. Fails to Allege Facts Sufficient to State a Claim for Breach of Fiduciary Duty

Plaintiffs similarly fail to allege facts showing any breach of fiduciary duty or damages. The elements of a claim for breach of fiduciary duty are: (1) existence of a fiduciary duty, (2) breach of that duty, and (3) damages flowing from the breach. *Columbia Bank v. Turbeville*, 143 So. 3d 964, 970 (Fla. Dist. Ct. App. 2014) (citing, *Cassedy v. Alland Invs. Corp.*, 128 So. 3d 976, 978 (Fla. Dist. Ct. App. 2014).

Under Florida law, a director is required to exercise his or her duties in good faith. Fla. Stat. § 607.0830. If a director does so, he or she is not liable for any actions taken as a director. *See id*. Moreover, under Florida law, a director is not personally liable for monetary damages to the corporation regarding corporate management unless the director breached or failed to perform his or her duties as a director and the director's breach of, or failure to perform, those duties constitutes: (i) a violation of criminal law, (ii) a transaction from which the director derived an improper personal benefit, either directly or indirectly; or (iii) the director's failure to perform his/her duties is in conscious disregard for the best interest of the corporation, or willful misconduct. *See* Fla. Stat. § 607.0831.

Here, the conclusory allegation of "mismanagement" is insufficient to state a claim for breach of fiduciary duty. Plaintiffs fail to allege a singular event or management decision that could be considered a breach of fiduciary duty. Moreover, and fatal to their claim, Plaintiffs fail to plead any particularized fact showing (i) a violation of criminal law, (ii) a transaction from which the Defendants derived an improper personal benefit, either directly or indirectly, or (iii) that

Defendants failed to perform his/her duties in conscious disregard for the best interest of the Bank, or willful misconduct, as required by Florida law. *See* Fla. Stat. § 607.0831; *Perlow*, 700 So. 2d 148, 149 (affirming dismissal of breach of fiduciary claims with prejudice where plaintiffs failed to allege facts sufficient to establish fraud, criminal activity or self-dealing/unjust enrichment as required by, *inter alia*, Fla. Stat. § 607.0831).

Although the Complaint improperly challenges a number of actions, or inactions, by the Defendants, it principally relies on a few unsupported claims described below:

**(i) Plaintiffs contend that it is improper for the Bank to have a foreign court-appointed and regulatory agency approved majority shareholder, and therefore, the Board breached their fiduciary duty.**

The Defendants recognize the Bank's majority shareholder relationship is unique. However, the Complaint mischaracterizes the relationship between the Bank and the Venezuelan government. As background, Mercorp, the majority shareholder of the Bank, is indirectly controlled through an interventor appointed to Mercorp's sole shareholder by the Venezulan Superintendent of Banks. Compl. at ¶ 17. The interventor, much like a receiver, is considered a public official under Venezuelan law, and exercises in that capacity all of the authority of Mercorp's shareholders, director, and officers. *See id.*

The appointed interventor, Defendant Gabina Rodriguez, reports to the Superintendent of Banks and other governmental entities. To ensure compliance with the Venezuela-related sanctions enforced and administered by the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC"), the Bank applied for, and obtained, two specific licenses to, among other things, operate in the ordinary course of business and effectuate a recapitalization in the

Bank: (i) VENEZULA-2019-362675-1 (the "Day-to-Day License")[1] and (ii) VENEZUELA-EO13884-2020-368971-2 (the "Recapitalization License")[2]. In addition to the two licenses described above, the Board confirmed with OFAC that the Day-to-Day License, the Recapitalization License together with General License No. 34A (collectively, the "Licenses"), authorizes corporate governance-related transactions and dealings pertaining to the Bank with Ms. Rodriguez in her director and shareholder capacity. Therefore, all allegations contained in the Complaint that Mercorp and Gabina Rodrguez's shareholder relationship with the Bank is improper cannot form the basis of Plaintiffs' causes of action for breach of a fiduciary duty.

The Court should not and cannot put on the hat of the Bank's regulator. The licenses described above, and recognized by OFAC, are sufficient to demonstrate that the majority shareholder relationship was approved by the appropriate regulatory agency and decision maker. Plaintiffs cannot use this action to challenge the propriety of the Board's conduct as it relates to the Bank's majority shareholder, when such conduct has been expressly authorized by an appropriate agency of the Executive Branch. Respectfully, it is not proper for this Court to step in the shoes of the Bank's regulator and judge the Defendants' conduct on this issue of governance.

**(ii) The Plaintiffs allege in conclusory fashion that the RSU Plan was improper self-dealing**

In compliance with the 2018 Consent Order, the Board began constructing a strategic plan that included an equity incentive program to attract and retain talent. The Board, with shareholder approval, created and implemented the restricted stock units plan (the "RSU Plan"). The RSU Plan, as noted by Plaintiffs, was created to attract and retain qualified directors and employees—and accomplished just that with the hiring of Mr. Ferreira in 2019, as well the retention of other

---

[1] Sealed Exhibit No. 3.
[2] Sealed Exhibit No. 4.

employees. The Complaint makes the conclusory allegation that just because the RSU Plan benefits some members of the Board – that alone is sufficient to demonstrate that the Board engaged in self-dealing. That is not the case. The Complaint alleges that "RSUs representing about 16% of the Bank's issued shares were issued to individuals, including Defendants…". Compl. at ¶ 50. Any allegations that the RSU Plan solely benefitted the Board is contradicted by the previous acknowledgement that other individuals received RSUs. The specific allegations in paragraphs 107(f) and 108(f) provide that Defendants breached their duty by "approving the RSU Plan that is the result of self-dealing for Defendants' own benefit, without providing value to the [Bank] shareholders." But this mere allegation that the Board decision did not provide a direct value to shareholders, without more, does not establish a claim of self-dealing.[3] Plaintiffs' boilerplate assertions are insufficient to meet their standard to plead facts sufficient to support the relief requested in this action. *See, e.g., DeBose v. City of Jacksonville*, No. 3:09-CV-579-J-34JRK, 2010 WL 11623427, at *6 (M.D. Fla. June 22, 2010) (concluding that boilerplate and conclusory allegations were insufficient to meet pleading standard).

Ms. Rodriguez stepped down from the Board in March 2021, therefore, her vote on behalf of Mercorp does not benefit her personally. Simply put, Ms. Rodriguez stands in the exact same position as the Plaintiffs. Such allegation of self-dealing is unsupported by the Complaint and timeline provided.

**(iii) Plaintiffs alleges, although contradictory, that the License Applications Contained Material Misrepresentations**

The Complaint alleges that the Board's application made to OFAC, on June 25, 2021, for the issuance of its Day-to-Day and Recapitalization License contained material misrepresentations

---

[3] Clearly the Bank's 99% shareholder did not agree with Plaintiffs and voted to approve the RSU Plan.

when it failed to disclose a *future* offer that had not yet been provided to the Board, as stated in the Complaint, based on a letter of intent dated October 8, 2021. See Compl. at ¶¶ 66-69. Setting aside the illogic of such an allegation, we are not aware of any legal duty that required the Board to anticipate a potential, non-binding recapitalization offer and disclose it to OFAC as part of the licensure process. In fact, due to the unpredictability of how and by whom the Bank's recapitalization would ultimately be effected, the Bank sought the broadest license it could at the time to give itself the best opportunity to consummate a recapitalization. OFAC granted this request, authorizing ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Compl., Sealed Ex. 4. Therefore, Plaintiffs' allegations that the Board had "other options at their disposal" is legally meaningless.

**(iv) Plaintiffs inaccurately allege that as the interventor Gabina Rodriguez is in sole control of the Bank and the Board**

The Complaint attempts to allege a lack of independence of the Board. Contrary to the Complaint, Ms. Rodriguez is not an agent of the Maduro regime, does not exercise sole control over the Board and its directors, and does not have sole control over the Bank.[4] These statements are an attempt to politicize the Board's actions. Further, Plaintiffs repeatedly sprinkle these unfounded allegations throughout the Complaint. See Compl. at ¶¶ 14, 15, 18, 49, 55, 56, 62, 94, 100. Notably, the Board has no control over the appointed official of the majority shareholder – and any allegation that attempts to hold the Board responsible is unfounded and directly contradicts

---

[4] As previously stated, Ms. Rodriguez stepped down from the Bank's Board in March 2021 and is no longer a director or officer.

the nature of the Board and shareholder relationship. These allegations cannot rise to the level of a breach – when the Board has no power, or duty, to select the representative of its majority shareholder.

**(v) Plaintiff allege that the Annual Shareholders meeting on December 17, 2021 was improperly conducted**

All business conducted at the December 17, 2021 annual shareholder meeting of the Bank (the "Annual Meeting") was explicitly approved by OFAC and authorized by the Licenses. As a supporting exhibit to the Complaint, the Plaintiffs provided the communication that supports such assertion. *See* Sealed Ex. 5.

In relevant part, OFAC acknowledged the relationship of the Bank's majority shareholder, Mercorp, and the voting rights of the intervenor, Ms. Rodriguez. The response permits the participation of Ms. Rodriguez to vote as the representative of the shareholder Mercorp. As such, the allegation that "the votes cast by Mercorp were invalid because they were blocked and not authorized by OFAC" is directly contradicted by Plaintiffs' own Complaint and incorporated exhibits. Compl. at ¶ 87 and Sealed Ex. 5.

Additionally, Plaintiffs suggests that Mercorp is required to have a separate OFAC license to vote. Such an assertion is deficient in two respects. First, even if Mercorp needed such a license, then Plaintiffs too would need the same license. Second, Plaintiffs fail to cite any support in favor of a license requirement to vote. ████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████

██████████████████████████████████████ Compl., Sealed Ex. 5.

All allegations regarding the Annual Meeting as pled are insufficient to state a claim upon which relief can be asserted. The Board sufficiently carried out its duty to properly notice the meeting, and went so far as to confirm the agenda and participants with the appropriate regulatory agency – and provided proof as such to the Plaintiffs – which is included in the Complaint. *See* Sealed Ex. 5. The Recapitalization License granted the Bank, and its Board, to (i) effectuate its recapitalization proposal; (ii) effectuate a change in control of ENB; and (iii) otherwise secure the necessary capital. The business conducted as the meeting, as supported by the Complaint and confirmed by OFAC, was necessary and ordinarily incident to these transactions.

The fact that Plaintiffs are frustrated that the majority shareholder vote, Mercorp, will likely carry the day and determine the outcome of shareholder voting, does not justify an ill-advised derivative claim against the Defendants for their conduct in recognizing the will of Mercorp. Similarly, the fact that Plaintiffs would vote differently than Mercorp does not make such conduct improper. Therefore, none of the conduct at the Annual Meeting is sufficiently pled to meet the requirements for breach of a fiduciary duty.

**(v) Plaintiffs' improperly allege that they are entitled to injunctive relief**

The Complaint seeks to "enjoin[] Defendants…from taking any action to implement the stock compensation scheme without proper authorization by the OCC and OFAC and without ratification of the plan by shareholder vote." Compl. at 31. Plaintiffs are not entitled to such relief by this Court. The Plaintiffs' request for the Court to oversee a regulatory agency, or call into question the legitimacy of the licensing and approval process which expressly allows the Board to conduct business and determine what is in the best interest of the Bank. The appropriate regulatory

agencies, OCC and OFAC, contain enforcement, examination and investigative authority to ensure the Bank's compliance.

**(vii) Plaintiffs fail to demonstrate how the Bank was injured as a result of the Defendants actions**

A derivative action is brought on behalf of the corporate entity – here, the Bank – not direct claims by the Plaintiffs. Therefore, Plaintiffs must demonstrate how the Bank, not themselves directly, were injured – which they fail to do. Notably, no injury to the Bank exists. The Complaint points to two alleged injures: (i) a factually unsupported loss of 20 million, Compl. at ¶ 45, and (ii) shareholder value, Compl. at ¶ 110. The Plaintiffs provide the Court with no support as to the calculation of damages, or how the actions were the cause of such injury.

To put the alleged injury to the Bank – which there was none – in perspective, the shareholder composition remains at status quo. Although the Plaintiffs' are frustrated with outcome of Board decisions, they represent *less than* 1% of the shareholder body. Such injury to shareholder value, if any, is merely speculative. Beyond that, the Complaint fails to demonstrate how the actions of the Defendants caused the Bank any monetary damage. The only injury to the Bank is due to Plaintiffs action – the expense and time taken away from conducting day-to-day management to dispute Plaintiffs' unsupported allegations. Notably, the Complaint alleges no monetary damages for 2021.

**IV.    The Complaint Must Be Dismissed Because the Business Judgment Rule Protects the Board**

Taking the allegations in the Complaint as true, Florida's business judgment rule, set forth in Section 607.0831, Florida Statutes, insulates the Defendants from liability for breach of fiduciary duty. Florida law excludes a cause of action against directors for ordinary negligence. *See Ferk Family, LP v. Frank*, 240 So.3d 826, 2018 WL 1074264, (Fla. 3d DCA Feb. 28, 2018),

quoting *Lobato-Bleidt v. Lobato*, 688 So.2d 431, 434 (Fla. 5th DCA 1997) (affirming trial court's application of the business judgment rule to preclude breach of fiduciary duty claims; "under the 'business judgment' rule, a board of directors is given wide discretion to make decisions and a court generally will not substitute its judgment for that of the directors."). *See also F.D.I.C. v. Florescue*, 2013 WL 2477246, at *4 (M.D. Fla. June 10, 2013) *citing FDIC v. Stahl*, 89 F.3d 1516 n. 12 ("The Florida legislature passed Fla. Stat. [ §§ 607.0830-.0831] to afford corporate officers and directors greater protection from liability [than ordinary negligence]...."); *FDIC v. Gonzalez-Gorrondona*, 833 F.Supp. 1545,1556 (S.D. Fla. 1993) ("We find that the Florida statute insulates corporate directors and officers from conduct amounting to gross negligence, and permits liability only for greater derelictions of the duty of care.").

This Complaint does not plead facts overcoming the protections of the business judgment rule or section 607.0831, Florida Statutes. The rules preclude the imposition of liability upon directors and officers for their actions, no matter how poor their business judgment, absent a showing by the plaintiff of abuse of discretion, fraud, bad faith or illegality. *In re The Bal Harbour Club, Inc.*, 316 F.3d 1192, 1195 (11th Cir. 2003) Here, the Complaint's, conclusory assertions, pejorative adjectives, and undifferentiated references to the Defendants are no substitute for the required facts. Missing are the allegations necessary to overcome the strong presumption created by the business judgment rule, and thus dismissal is required.

## CONCLUSION

Based on the foregoing, Plaintiffs fail to satisfy the heightened pleading standard to initiate a derivative action, the Complaint constitutes a shot-gun pleading, and the Complaint fails to meet the requirements to state claims for breach of a fiduciary duty. Therefore, the Complaint is improper, insufficient, fails to state a cause of action – and must be dismissed.

Dated: March 14, 2022.

Respectfully submitted,

/s/ *Jose A. Casal*
Jose A. Casal
Florida Bar No. 767522
Sydney Alexander
Florida Bar No. 101
Holland & Knight LLP
701 Brickell Avenue, Suite 3300
Miami, FL 33131
Telephone: (305) 789-7713
Email: jose.Casal@hklaw.com
Email: sydney.alexander@hklaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on the 14th day of March, 2022, the undersigned electronically filed the foregoing document with the Clerk of the Court using CM/ECF on all counsel of record upon:

Derek E. León, Esq.
León Cosgrove, LLP
255 Alhambra Circle, 8th Floor
Miami, FL 33134
Email: dleon@leoncosgrove.com
Email: eperez@leoncosgrove.com

/s/ *Jose A. Casal*
Jose A. Casal