**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 22-20201-CV-GAYLES/TORRES

BANCOR GROUP INC., and
STITCHING PARTICULIER FONDS
FRANEKER, derivatively on behalf of
EASTERN NATIONAL BANK, N.A.,

 *Plaintiffs*,

v.

GABINA RODRIGUEZ,
LOUIS FERREIRA,
CESAR GOMEZ VALERO,
KEITH PARKER,
CARLOS RODRIGUEZ, and
GUSTAVO MACIAS,

 *Defendants*.

_____/

**REPORT AND RECOMMENDATION ON DEFENDANTS'
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

This matter is before the Court on Defendants' motion to dismiss Plaintiffs' complaint for lack of subject matter jurisdiction. [D.E. 145]. Plaintiffs responded to Defendants' motion, [D.E. 155], to which Defendants replied, [D.E. 164]. Therefore, Defendants' motion is now ripe for disposition. After careful consideration of the complaint, briefing, relevant authority, and for the reasons discussed below, Defendants' motion to dismiss should be **DENIED**.[1]

---

[1] On January 21, 2022, the Honorable Darrin P. Gayles referred all pending matters to the undersigned Magistrate Judge for disposition. [D.E. 9].

1

## I. BACKGROUND

Eastern National Bank is a federally chartered financial institution headquartered in Miami-Dade County. Defendants are (or recently were) board members responsible for managing the affairs of the Bank. Plaintiffs are two minority shareholders who filed this derivate lawsuit almost one year ago in an attempt to hold Defendants responsible for allegedly harming the Bank through various breaches of their fiduciary duties.

Plaintiffs allege, among other things, that by "[a]llowing the Bank to be managed and controlled at the direction of the Government of Venezuela," Defendants have breached the duty of care and the duty of loyalty that they owe to the Bank. [D.E. 1 at ¶¶ 107(g), 116(d)]. This is not a conclusory allegation. We have already addressed the sufficiency of the facts alleged in Plaintiffs' complaint by resolving Defendants' previous motion to dismiss. [D.E. 67, 100]. Accordingly, it is not necessary to review the allegations in exhausting detail at this juncture. But because Defendants now challenge this Court's power to hear the instant case, some additional context is warranted.

Until recently, the Bank's articles of association authorized the Bank to issue two million shares of stock. Over the years, presumably to raise capital for the Bank through equity financing, the Bank has issued just under one million shares of that stock to its shareholders. Mercorp, N.V., a company established under the laws of Curaçao, owns approximately 99.9% of that issued stock, which for all practical purposes gives it control over the Bank's board of directors. Mercorp is a wholly

owned subsidiary of Corpofin, C.A., another foreign entity that is organized under the laws of Venezuela.

According to the complaint, Corpofin is subject to the Venezuelan version of a receivership. This means that the Superintendence of Banks of the Bolivarian Republic of Venezuela ("Sudeban"), an agency of the Venezuelan government akin to the FDIC, controls Corpofin through its appointed receiver: Defendant Gabina Rodriguez. Using the power of this receivership, Gabina Rodriguez has appointed herself as the sole managing director of Mercorp and, until recently, chair of the Bank's board of directors.

During the tenure of Gabina Rodriguez, Presidents of the United States began instituting severe economic sanctions against the Venezuelan government in response to widely documented human rights violations in that country. Accordingly, Banco de Venezuela, a government-owned Venezuelan bank that previously employed Gabina Rodriguez, lost all of its correspondent banking relationships in the United States.

Cognizant of the substantial compliance infrastructure that would be required to maintain a correspondent banking relationship with Banco de Venezuela in light of the economic sanctions, the Bank opted to go in a different direction than its competitors and therefore opened a correspondent bank account for Banco de Venezuela in 2017. Within a matter of months, the Bank's regulator issued, and the Bank's board of directors consented to, a Consent Order that found multiple

deficiencies in the Bank's Bank Secrecy Act and Anti-Money Laundering compliance practices relating to the operation of the Banco de Venezuela correspondent account.

So, to recap, Plaintiffs allege that the Bank is controlled by Mercorp, its majority shareholder, which is in turn controlled by Corpofin, which is in turn controlled by the Venezuelan government. And, with this ownership structure clearly defined in the complaint, Plaintiffs allege that Defendants have breached their fiduciary duties by, among other things, managing the Bank in a manner that serves the interests of the Venezuelan government instead of the interests of the Bank.

Plaintiffs also allege that this Court has jurisdiction over their lawsuit pursuant to the Edge Act, a statute that grants federal courts jurisdiction over certain disputes "arising out of transactions involving international or foreign banking . . . or out of other international or foreign financial operations[.]" 12 U.S.C. § 632. Plaintiffs do not allege any other source of federal jurisdiction. Accordingly, Defendants now lodge a facial attack on this allegation, contending pursuant to Federal Rule of Civil Procedure 12(b)(1) that the complaint contains "no allegation that the acts giving rise to Plaintiffs' state law breach of fiduciary duty claims arose from traditional international banking activities" and therefore the Court lacks subject matter jurisdiction. For the reasons discussed below, this Court disagrees.

## II.   ANALYSIS

Federal courts are courts of "limited jurisdiction." *Trump v. United States*, No. 22-13005, 2022 WL 17352069, at *1 (11th Cir. Dec. 1, 2022) (published opinion) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

Accordingly, federal courts "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Id.*

The Edge Act is an example of the federal district courts' authorized power to adjudicate certain cases – specifically, those arising out of international or foreign banking that fit within the jurisdictional framework defined by Congress. 12 U.S.C. § 632. This jurisdictional framework requires: (1) that the lawsuit be civil in nature; (2) that one of the parties to the lawsuit be a corporation organized under the laws of the United States, such as a federally chartered bank; and (3) that the lawsuit arises out of a transaction involving international banking or foreign financial operations. *Id.*; *see also, e.g., Warter v. Boston Securities, S.A.*, No. 03-81026, 2004 WL 691787, at *5 (S.D. Fla. Mar. 22, 2004). Here, Defendants submit only that Plaintiffs' complaint fails to satisfy the third prong.

When considering the limits of Edge Act jurisdiction, courts in this District look to the "true nature of the action" to determine whether it arises out of a traditional banking activity with a foreign aspect. *Vara v. Inocenti*, No. 18-23058, 2018 WL 8415251, at *1 (S.D. Fla. Nov. 16, 2018) (citing *Telecredit Serv. Center v. First Nat'l Bank of the Florida Keys*, 679 F. Supp. 1101, 1104 (S.D. Fla. 1988)). In other words, to exercise subject matter jurisdiction pursuant to the Edge Act, we require the international banking aspect of the case to be *central* to the parties' dispute. Other courts have subscribed to a broader view of Edge Act jurisdiction. *See, e.g., Luby's Fuddruckers Restaurants, LLC v. Visa Inc.*, 342 F. Supp. 3d 306, 318 (E.D.N.Y. 2018) ("[T]he Edge Act does not require the foreign transaction to be central

5

to the claim."). But, as the Sixth Circuit has noted, adhering to an overly broad interpretation of Edge Act jurisdiction would be dangerous because it could lead to limitless applications of our limited jurisdiction. *See Sollitt v. KeyCorp*, 463 F. App'x 471, 473-74 (6th Cir. 2012) ("Suppose, for example, that Sollitt had tripped and fallen over a stack of carelessly placed printouts of foreign-currency transactions. This meager association—ridiculous as it is—between the potential negligence claim and the foreign banking transaction that generated the printouts, would appear to suffice for Edge Act jurisdiction under so limitless a view. That cannot be correct.").

Beyond centrality, we also require that the international banking aspect of the case involve "traditional" banking activities (e.g., transactions involving mortgage foreclosures, letters of credit, or the purchasing of a certificate of deposit). *See Telecredit*, 679 F. Supp. at 1103; *Hernandez Perez v. Citibank, N.A.*, 328 F. Supp. 2d 1374, 1379 (S.D. Fla. 2004). This Court has little trouble finding that the opening and operating of a correspondent bank account for Banco de Venezuela qualifies as a traditional banking activity with a foreign aspect.

In general terms, a correspondent account is a bank account established by one financial institution to receive deposits from, make payments on behalf of, and handle other financial transactions for another (typically foreign) financial institution. For example, imagine that a customer of a Venezuelan bank wants to buy a condo in Miami. The condo costs $500,000.00 and the seller requires that the purchase price be paid in United States Dollars, which must be deposited in the seller's United States bank account. The buyer has sufficient funds to cover the transaction,

6

however, these funds are comprised of Venezuelan Bolivars that are deposited in the buyer's Venezuelan bank account. Because the Venezuelan bank holds its United States Dollars in its correspondent account at a United States bank, the Venezuelan bank can utilize its correspondent account to conduct the buyer's requested transaction by (1) debiting the buyer's Venezuelan account to pay itself in Venezuelan Bolivars and then (2) debiting its correspondent account to transfer United States Dollars to the seller's United States bank account. Given the general nature of correspondent banking, the Court concludes that the Bank engaged in traditional international banking activities by opening and operating a correspondent account for Banco de Venezuela.

Therefore, the ultimate question presented by Defendants' motion to dismiss is whether the Banco de Venezuela correspondent account is central to the overall dispute between the parties. To be sure, Plaintiffs have alleged a variety of ways in which Defendants breached their fiduciary duties and not all of these theories of liability directly concern international banking operations. For example, Plaintiffs also complain that the creation of an equity compensation plan in 2018 was the product of improper self-dealing and a breach of the Bank's internal governing documents. That issue does not focus on the creation or management of the correspondent account at all.

But a pervasive issue in this case is whether the allegedly disloyal and careless choices made by some of the Bank's board of directors were motivated by something beyond pecuniary gain – specifically, a desire to serve the interests of a foreign

7

sovereign at the expense of the Bank.  Accordingly, the issues surrounding the Banco de Venezuela correspondent account cannot be entirely separated from the other theories of liability.  Indeed, from a chronological perspective, the opening of this account arguably catalyzed other alleged fiduciary breaches.  Hence it is central to the overall dispute at issue in the case.  So because the true nature of this action concerns international banking operations, the Court has subject matter jurisdiction under the Edge Act. *See Hernandez Perez*, 328 F. Supp. 2d at 1379 (exercising Edge Act jurisdiction where an international banking operation was central to the case); *Bank of America Corp. v. Lemgruber*, 385 F. Supp. 2d 200, 214-16 (S.D.N.Y. 2005) (exercising Edge Act jurisdiction when defendants' allegedly fraudulent actions, which formed the factual basis of plaintiffs' breach of warranty claims, were "clearly foreign or international banking transactions."); *Ritchie Capital Mgmt., LLC v. JP Morgan Chase & Co.*, 960 F.3d 1037, 1047 (8th Cir. 2020) ("[W]hether we view Edge Act jurisdiction restrictively or expansively, the allegations here suffice.").

### III.  CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Defendants' motion to dismiss be **DENIED**:

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge.  Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on

appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 21st day of December, 2022.

EDWIN G. TORRES
United States Magistrate Judge