## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 1:22-cv-20201-GAYLES/TORRES

BANCOR GROUP, INC., and STITCHING
PARTICULIER FONDS FRANEKER,
derivatively on behalf of
EASTERN NATIONAL BANK, N.A.,

      Plaintiffs,

vs.

GABINA RODRIGUEZ, LOUIS FERREIRA,
CESAR A. GOMEZ VALERO, KEITH PARKER,
CARLOS RODRIGUEZ, and GUSTAVO MACIAS

      Defendants.

_____/

### ORDER ON PLAINTIFFS' MOTION TO DISQUALIFY
### DEFENDANTS' COUNSEL MICHAEL DIAZ, JR., &
### THE LAW FIRM OF DIAZ, REUS & TARG, LLP

This matter is before the Court on Bancor, Group, Inc., and Stitching
Particulier Fonds Franeker, derivatively on behalf of Eastern National Bank, N.A.'s
("Plaintiffs") motion to disqualify Michael Diaz, Jr. ("Mr. Diaz") and the law firm of
Diaz, Reus & Targ, LLP ("the Firm" or "DRT") from representing Gabina Rodriguez,
Louis Ferreira, Cesar A. Gomez Valero, Keith Parker, Carlos Rodriguez, and Gustavo
Macias ("Defendants") in the above styled case.  [D.E. 146.]  Defendants filed their
response on November 17, 2022. [D.E. 159.]  The Court held an evidentiary hearing
on January 11, 2023, following which the Court requested the parties file

supplemental briefings on the matter.  [D.E. 209.]  On January 17, 2023, Defendants filed their supplemental briefing.  [D.E. 191.]  On the same day, Plaintiffs filed its supplemental brief. [D.E. 192.]  Therefore, Plaintiffs' motion is now ripe for disposition.  After careful consideration of the motion, response, additional briefings, relevant authority, and for the reasons discussed below, Plaintiff's motion is **GRANTED** in part and **DENIED** in part**.**

## I.  BACKGROUND

Plaintiffs sued Defendants, as members of the Eastern National Bank ("ENB") Board of Directors, alleging as follows: (1) that ENB is an organization, either in form or substance, controlled by the Venezuelan government; that Defendants, (2) failed to comply with a 2018 Consent Order issued by the Comptroller of the Currency of the United States ("OCC"), [D.E. 1, Exhibit 1]; (3) failed to comply with a subsequent 2020 Consent Order and continue to fail to comply with the order, [D.E. 1, Exhibit 2]; (4) have engaged in an improper stock compensation scheme; and (5) have violated ENB's By–Laws and Articles of Incorporation.  Based on these allegations, Defendants have thereby breached their fiduciary duties of care, loyalty, and good faith.  [D.E. 1.]

On September 29, 2022, Defendants' prior counsel moved to withdraw from this matter.  Subsequently, Defendants hired new counsel from the law firm of Diaz Reus & Targ LLP.  Plaintiffs claim Defendants' counsel, Mr. Diaz, (and, therefore, DRT by imputation) has an extensive previous relationship to Plaintiff's beneficial owner, Mr. Juan Santaella ("Mr. Santaella").  [D.E. 146.]  Plaintiffs' claim Mr. Diaz

was a named partner at the law firm Richey & Diaz, P.A. ("Richey & Diaz") when that firm represented Mr. Santaella in litigation substantially related to this current matter.  [Id.]

In 1996, the Venezuelan Government—by and through the Fondo De Garantia de Depositos y Proteccion Bancaria ("FOGADE")[1]—filed a lawsuit in the Southern District of Florida against several individuals and entities related to ENB.  *See FOGADE v ENB Revocable Trust*, No. 96–1679–CIV (S.D. Fla. June 26, 1996) (the "Prior Litigation"). [D.E. 146.]   Mr. Santaella was included as a defendant to the Prior Litigation, both individually and on behalf of several entities. [Id.] The evidentiary record in this matter shows that Mr. Diaz's partner, Attorney William L. Richey, of Richey & Diaz, represented Mr. Santaella in the Prior Litigation.  The Prior Litigation involved a dispute over the transfer of over ninety-nine percent (99%) of the outstanding shares of the common stock of ENB.  The Prior Litigation, including appeals, lasted until 2002 and involved several related bankruptcy proceedings.  *See in re Santaella*, Case no. 00–16366 (Bankr. S.D. Fla.) [D.E. 13.]  The Court finds that Mr. Richey, and the firm Richey & Diaz, represented Mr. Santaella for at least a two–year period before Mr. Diaz left that firm.

In response, Defendants first claim that the Plaintiffs in this case were not parties to the Prior Litigation and therefore lack standing to seek disqualification. [D.E. 159.]  Defendants also claim that Mr. Diaz, while a named partner at Richey &

---

[1] FOGADE is the Venezuelan equivalent of the United States Federal Deposit Insurance Corporation ("FDIC").

Diaz, was never involved in the Prior Litigation and never represented Mr. Santaella. [Id.]  Defendants further insist Mr. Diaz had no access to any files regarding Mr. Santaella or the Prior Litigation. [Id.]  So, there is no basis to disqualify him or his current firm from representing the named Defendants in a lawsuit filed by these Plaintiffs, none of whom are Mr. Santaella personally.

## II.   ANALYSIS

"The party bringing the motion to disqualify bears the burden of proving the grounds for disqualification." *Perez v. City of Hialeah*, 526 F. Supp. 3d 1304, 1312 (S.D. Fla. 2020) (internal quotation marks omitted) (quoting *Herrmann v. GutterGuard, Inc.*, 199 F. App'x. 745, 751 (11th Cir. 2006) (citing *In re BellSouth Corp.*, 334 F.3d 941, 961 (11th Cir. 2003))).  While "a party is presumptively entitled to the counsel of his choice, that right may be overridden [] if [a] compelling reason[] exist[s]." *In re BellSouth*, 334 F.3d at 961 (internal quotation marks and citations omitted).  In other words, one's right to the counsel of their choice does not equate to an absolute freedom of said choice: "[counsel] must not have a conflict of interest with another party." *McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1262 (5th Cir. 1983).

"Motions to disqualify are governed by two sources of authority. First, attorneys are bound by the local rules of the court in which they appear.... Second, federal common law also governs attorneys' professional conduct because motions to disqualify are substantive motions affecting the rights of parties." *Hermann*, 199 F. App'x at 752.

The pertinent part of S.D. Fla. Local Rule 11.1(c) provides that "[t]he standards of professional conduct of members of the Bar of this Court shall include the current Rules Regulating The Florida Bar." Consequently, Florida law states, "[a]n order involving the disqualification of counsel must be tested against the standards imposed by the Rules of Professional Conduct." *Bedoya v. Aventura Limousine & Transp. Service, Inc.*, No. 11–24432–CIV, 2012 WL 1534488, at *1 (S.D. Fla. Apr. 30, 2012) (quoting *Morse v. Clark,* 890 So. 2d 496, 497 (Fla. 5th DCA 2004) (citing *City of Lauderdale Lakes v. Enter. Leasing Co.,* 654 So. 2d 645 (Fla. 4th DCA 1995))).

Plaintiffs argue, and the Court agrees, that this case is therefore governed by the Florida Bar's Rules 4–1.9 and 4–1.10.

Rule 4–1.9 provides, in relevant part:

A lawyer who has formerly represented a client in a matter must not afterwards:

(a) represent another person in the same or a **substantially related** matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent;

(b) use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information has become generally known...."

R. Regulating the Fla. Bar 4–1.9 (emphasis added).

The Comment to Rule 4–1.9 states that "[m]atters are 'substantially related' for purposes of this rule if they involve the same transaction or legal dispute, or if the current matter would involve the lawyer attacking work that the lawyer performed for the client."

In interpreting Rule 4–1.9, Florida courts have concluded that, to succeed on a motion for disqualification under the rule, the movant must establish: "(1) an attorney–client relationship existed, thereby giving rise to an *irrefutable presumption* that confidences were disclosed during the relationship, and (2) the matter in which the law firm subsequently represented the interest adverse to the former client was the same or *substantially related* to the matter in which it represented the former client." *State Farm Auto. Ins. Co. v. K.A.W.*, 575 So. 2d 630, 633 (Fla. 1991) (emphases added) (citing *Ford v. Piper Aircraft Corp.,* 436 So. 2d 305, 305 (Fla. 5th DCA 1983); *Sears, Roebuck & Co. v. Stansbury*, 374 So. 2d 1051, 1051 (Fla. 5th DCA 1979)).

Hence, we turn first to the analysis of whether there had previously been an attorney–client relationship between Mr. Santaella and Diaz.

## A.     *Rule 4–1.9 — Existence of an Attorney–Client Relationship*

The case the Plaintiffs make on this first element of their burden is that there is no disputing that Mr. Santaella had an attorney-client relationship with Mr. Diaz for at least two years during the Prior Litigation. Indeed, Mr. Diaz conceded at the Hearing that his law firm represented Mr. Santaella between 1996 and 1998. Mr. Diaz also testified that he was aware that part of the strategy in that case was to make a splash by serving process on a FOGADE director. Additionally, Mr. Santaella credibly testified that he met with Mr. Diaz in more than one occasion where case strategy was discussed. Accordingly, Plaintiffs maintain, an attorney-client relationship between Mr. Santaella and Mr. Diaz existed.

Defendants counter that the motion fails to satisfy this first element because these Plaintiffs lack standing to challenge Mr. Diaz's representation of Defendants. Defendants contend that, as neither Mr. Diaz nor Mr. Richey had represented Bancor or Franeker, and as Mr. Santaella is not a named party in this case, Plaintiffs lack standing to seek disqualification of Mr. Diaz and DRT in the first place. [D.E. 159.]

Under Florida law, however, the standard that applies is a broader one than Defendants suggest:

> Where the conflict [between a lawyer and that lawyer's clients] is such as clearly to call in question the fair or efficient administration of justice, opposing counsel may properly raise the question. [R. Reg. the Fla. Bar] 4–1.7 cmt.; see also [R. Reg. the Fla. Bar] 4–1.9 cmt. (citing [R. Reg. the Fla. Bar] 4–1.7 cmt. and recognizing that someone other than a client or former client may move for disqualification in conflict–of–interest situations).

*Bedoya*, 2012 WL 1534488, at \*4.  Therefore, direct privity of contract is *not* required if an aire of impropriety is likely to be shown.  *E.g., Kenn Air Corp. v. Gainesville–Alachua Cty. Reg'l Airport Auth.*, 593 So. 2d 1219, 1222 (Fla. 1st DCA 1992) (authorizing standing for a party's attempt to disqualify the opposition attorney since "switching sides and conflict of interest in simultaneous representation are two ethical violations that can be clearly seen by persons other than clients.").

Based on this standard, we find that Plaintiffs have standing to challenge Mr. Diaz's representation of Defendants based on the circumstances present in this record.  While Defendants assert Mr. Diaz never had an attorney–client relationship with Mr. Santaella, and Mr. Diaz has credibly testified that he never believed a personal attorney-client relationship existed, [D.E. 209], the existence of the

relationship depends on "the perspective of the person seeking out the lawyer[.]" *Bartholomew v. Bartholomew*, 611 So. 2d 85, 86 (Fla. 2d DCA. 1992). Here, Mr. Santaella's credible testimony reflects his belief at the time, and to this day, that Mr. Diaz was his attorney. [D.E. 146, Exhibit A ("Mr. Diaz met with me on more than one occasion during which I discussed my knowledge of the relevant facts and shared confidential information.")]. He concedes that most of his dealings in the litigation were with Mr. Richey and that Mr. Richey was the lead lawyer who represented him in the Court proceedings. But he paid the legal bills of Richey and Diaz throughout this time period, and he and Diaz always dealt with themselves as attorney and client.[2]

So, while Defendants claim Mr. Diaz never had an attorney–client relationship with Mr. Santaella or Plaintiffs, it is undisputed that Mr. Richey, and the firm of Richey & Diaz, did. Defendants seem to argue that Rule 4–1.9 requires Mr. Diaz to have directly represented the Plaintiff entities themselves to trigger standing. In support of this argument, Defendants point to *Montoya v. Morgan* which states that "it is well established that representing an entity does not establish an attorney–client relationship with members of the entity, or vice versa." No. 3:16–cv–092–MCR/EMT, 2017 U.S. Dist. LEXIS 225723, at *10 (N.D. Fla. June 2, 2017). However,

---

[2]      Again, the Court credits Mr. Diaz's testimony that he treated Mr. Santaella as a client of his partner, Mr. Richey, and not his own client. Mr. Diaz credibly testified that he had his cases and clients separate from Mr. Richey's. But even taking Mr Diaz's recollection at face value because it was entirely credible, that does not dispose of the legal issues presented to the Court under Rule 4-1.9.

*Montoya* is significantly different from the facts in this case, apart from the fact it is a non-precedential decision in the first place.

There, plaintiff was employed by the Escambia County Sheriff's Office. *Id.* at *3. In an unrelated lawsuit against the Sheriff's office, plaintiff was deposed, in her capacity as a law enforcement official, and accompanied by counsel representing the Sheriff's department. *Id.* In this one specific context, no one would contest that attorneys who represent legal/institutional entities (such as the Sheriff's department) represent the entity and therefore do not "establish [] attorney–client relationship[s] with members of the entity." *Id.* at *10. Given that limited connection, no disqualification could be raised by the individual against the institutional lawyers who defended her deposition. But this does not translate to other contexts, like the one here where the lead lawyer and partner of a law firm with Mr. Diaz, Mr. Richey, *did* represent Mr. Santaella in his individual capacity over his interests in Eastern National Bank.

Much more relevant here, by contrast, is the established principle that "the presumed access of a partner to confidential information imputes knowledge of that information to others in his firm." *Sears, Roebuck & Co.*, 374 So. 2d at 1053. As the Court found, Mr. Richey and the firm Richey & Diaz represented Mr. Santaella. Where such a direct attorney–client relationship has been established, "there is an irrebuttable presumption [that] members of the firm have obtained confidential knowledge from the relationship." *Matter of Outdoor Prod. Corp.*, 183 B.R. 645, 648–49 (Bankr. M.D. Fla. 1995). *See also Sears, Roebuck & Co.*, 374 So.2d at 1053 (stating

"the presumed access of a partner to confidential information imputes knowledge of that information to others in his firm."). At a minimum, that presumption means that standing on the part of the former client in this context is firmly established.

Importantly, the Eleventh Circuit has dealt with a case where the conflict challenge also stemmed from a partner's representation of a client. In *Cox v. Am. Cast Iron Pipe Co.*, there was conflict regarding whether an attorney (Wiggins) had an attorney-client relationship with a company (ACIPCO). 847 F.2d 725, 729 (11th Cir. 1988). On appeal the Court found that while "Wiggins has never represented ACIPCO.... Wiggin's current partner, Childs, participated in an attorney–client relationship with ACIPCO. Because Childs actually represented ACIPCO, he is charged with the virtually unrebuttable presumption that he [ ] received confidential information [ ]. In addition, Childs' knowledge may be imputed to his current partners and employees." *Id.* at 729–30.

Similarly, we conclude that Mr. Diaz, through his long-time association and partnership with Mr. Richey and the law firm of Richey & Diaz, had an attorney-client relationship with Mr. Santaella. And Mr. Santaella is not a named party in the pending case but he indisputably has beneficial interests in those entities and in the outcome of this litigation. The strongest evidence of Mr. Diaz's understanding of that interest can be found in his very first filing in the case, when he filed the supplemental opposition to Plaintiff's amended motion for preliminary injunction filed by Plaintiffs. [D.E. 134]. While Mr. Santaella was not a party to that motion, nor a party to the action as a whole, Defendants through Mr. Diaz stridently asserted

that this case was nothing more than "another attempt by *Mr. Juan Santaella* to take back something – Eastern National Bank, N.A. . . . – that, by operation of law is no longer under his control. Indeed *Mr. Santaella* has been attempting to regain control of the Bank for nearly thirty years. . . . To be sure, *Mr. Juan Santaella's* prior attempt to wrest back control of the Bank was squarely rejected by Courts in this Circuit. [citing the Fogade litigation that Mr. Diaz's partner spearheaded when they represented *Mr. Santaella*]. . . . Before the Court now is *Mr. Juan Santaella's* (i.e. Plaintiffs') Amended Motion for Preliminary Injunction.  That Plaintiffs' Amended Motion relies on specters rather than facts should come as no surprise, and this Court should deny the Amended Motion." [D.E. 134 at 2-3 (emphasis added)].

It suffices to say that it takes a fair amount of chutzpah to launch a day-one attack on his former *client* as being the alter ego of all Plaintiffs in this action (so as to smear them with the supposed taint that the law firm of Richey and Diaz could not prevent in the FOGADE Litigation), and then turn around a few months later and argue that Mr. Santaella individually has no standing to complain about Mr. Diaz's representation because he is not really a plaintiff party in the case.  Mr. Diaz's own filings in this case fully undermine the newly-found theory here that Mr. Santaella has no standing or that the motion should be denied because no attorney-client relationship has been shown to exist between these Plaintiffs and Mr. Diaz.

In sum, the Court agrees with Mr. Diaz's initial pronouncement about this case and finds that Mr. Santaella has shown that his beneficial interests in this case confer complete standing for him to seek to disqualify Defendants' counsel.  And, further,

that he has shown that he was in fact represented by Mr. Diaz when he was partnered with Mr. Richey at the very same time the FOGADE litigation was underway.  The record leads to only that conclusion and thus the first element for disqualification has been satisfied.

### B.   _Rule 4–1.9 — Substantially Similar Litigation_

To satisfy the second prong of a Rule 4–1.9 motion for disqualification, the moving party must show that "the matters presently involved are substantially related to the matters in which prior counsel represented the former client." _Hernandez v. Royal Caribbean Cruises Ltd_, No. 10–21636, 2010 U.S. Dist. LEXIS 98113, at *18–19 (S.D. Fla. Sep. 7, 2010).

Defendants assert that the two claims are not similar.  In support of this, Defendants assert that, in the Prior Litigation, a dispute over the ownership and control of ENB was at issue.  By contrast, here Plaintiffs are accusing ENB's Board of Directors of improperly conducting ENB's internal affairs.   [D.E. 159.]   So, Defendants posit, there is no substantial relationship between the two actions.

The Court is not convinced on this score either.  In the Prior Litigation, Mr. Santaella retained the law firm of Richey & Diaz to protect his interest in ENB from litigation brought by FOGADE against Mr. Santaella and ENB.  As laid out extensively in the briefings, it is not in dispute that the Venezuelan Government, directly or indirectly, owns a substantial, almost total, share of ENB.  Either directly, or indirectly, FOGADE played a part in choosing ENB's Board of Directors.  It is thus

impossible not to conclude that FOGADE's role is central to *both* cases so a substantial relationship undoubtedly exists.

Further support for this conclusion exists in this record. For instance, Defendants successfully sought to depose Mr. Santaella even though they claim he is not a relevant party to the case. Yet again, Defendants simultaneously try to emphasize Mr. Santaella's (allegedly) irrelevant role in these proceedings while also attacking Mr. Santaella's character in their briefings. Undoubtedly much of the conduct cited took place at a time when Mr. Santaella was still a client of Richey & Diaz. Indeed, Defendants' attacks on Mr. Santaella, whatever their veracity, convince the Court that, in fact, Mr. Santaella is a relevant part of this case and, further, that the two cases are materially linked. In other words, the Court cannot view the matters as *unrelated* to the Prior Litigation where Defendants have acknowledged in writing that Mr. Santaella has been embroiled in litigation involving ENB for "nearly thirty years," and have classified *this case* as "another attempt by Mr. Juan Santaella to take back" ENB. [D.E. 132, at 2.]. This record fully supports the Court's finding that the two matters are substantially related for purposes of Rule 4-1.9. *See, e.g., Young v. Achenbauch*, 136 So. 3d 575, 583 (Fla. 2014) (unanimously remanding for entry of disqualification in part under Rule 4-1.9 because "[m]atters are 'substantially related' for purposes of this rule if they involve the same transaction or legal dispute, *or if the current matter would involve the lawyer attacking work that the lawyer performed for the former client*.'") (quotation omitted; emphasis added); *ASI Holding Co. v. Royal Beach & Golf Resorts, LLC*, 163 So. 3d

668, 671 (Fla. 1st DCA 2015) (remanding for disqualification of law firm that counseled former client ten years earlier; "this case not only involves the same 'type' of representation (i.e., breach of contract), but would have [former firm] attacking the validity of the very document that it had previously represented to be valid and legally binding.").

The Court finds that a "substantial relationship" exists between the two cases, and therefore, the irrefutable presumption arises that confidential information was disclosed. *See K.A.W.*, 575 So.2d at 633 (stating "the presumption acknowledges the difficulty of proving that confidential information useful to the attorney's current client was given to the attorney"). The fact that the parties and remedies involved in the two cases may be very different does not negate the fact that the substance of the two cases share substantial overlap. They are thus substantially related for purposes of Rule 4-1.9.

Having now found that an attorney-client relationship existed between Mr. Diaz and Mr. Santaella, and further that that relationship included representation in substantially similar litigation involving the Bank and Mr. Santaella's interests in the Bank, it follows that, as per Florida Bar Rule 4–1.9, the Court is required to disqualify Mr. Diaz from any further involvement in this action and he must cease representing Defendants in this matter, either as counselor or advocate in Court. *See, e.g., State Farm v. K.A.W.,* 575 So. 2d at 633-34 (remanding for disqualification of law firm that had attorney-client relationship in substantially similar litigation even absent showing of actual prejudice; "The [irrefutable] presumption acknowledges the

difficulty of proving that confidential information useful to the attorney's current client was given to the attorney. It also protects the client by not requiring disclosure of confidences previously given to the attorney."); *Global Lab Partners, LLC v. Patroni Enterprises, LLC*, 327 So. 3d 453, 457 (Fla. 1st DCA 2021) (affirming disqualification of counsel under Rule 4-1.9; "Based on the totality of the circumstances presented at the hearing, the trial court had a basis to deem the perceived attorney-client relationship "objectively reasonable." Upon proof of a prior attorney-client relationship that was interconnected with the current litigation, the trial court appropriately granted Appellees' motion to disqualify Counsel.").

The Court now turns to the far more complex issue of Diaz, Reus & Targ, LLP's ability to continue representing Defendants without Mr. Diaz's involvement.

### C.  *Rule 4–1.10 — Disqualification of Diaz's New Law Firm*

Plaintiffs argue that this "Court should exercise its discretion to disqualify Attorney Diaz *and* DRT from representing Defendants." [D.E. 146, at 9.]  Plaintiffs emphasize that the Prior Litigation and this matter are substantially related and that Defendants' filings "are dedicated to attacking Mr. Santaella's character." [D.E. 192, at 6.]  Plaintiffs state that "whether Mr. Diaz actually participated in the Prior Litigation and whether Mr. Diaz *actually obtained* confidential information from Mr. Santaella is entirely irrelevant to the analysis." [D.E. 192, at 6-7 (emphasis added)].  Furthermore, Plaintiffs conclude, "[h]aving established a prior attorney-client relationship in a substantially related matter Plaintiffs have met their burden [for] disqualification of…DRT under Rule 4–1.10(a)."  [D.E. 192, at 7.]

We thus turn next to whether subsection (a) of Rule 4-1.10 applies to require disqualification of DRT, separate and apart from Diaz who has now been disqualified under Rule 4-1.9. If not, we also consider whether subsection (b) of the same Rule triggers disqualification of DRT. In relevant part, Rule 4–1.10 provides:

> **(a) Imputed Disqualification of All Lawyers in Firm.** While lawyers are associated in a firm, none of them may knowingly represent a client when any 1 of them practicing alone would be prohibited from doing so by rule 4-1.7 or 4-1.9….

> **(b) Former Clients of Newly Associated Lawyer.** When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by rules 4-1.6 and 4-1.9(b) and (c) that is material to the matter.

R. Reg. Fla. Bar 4–1.10.

Plaintiffs principally base their demand for disqualification of DRT under subsection (a). It is undisputed, however, that DRT never represented Mr. Santaella. Mr. Diaz's conflict only arises out of his association with Richey & Diaz. Under these circumstances, our review of Florida law shows that subsection (a) is inapplicable when a conflicted attorney has moved firms.

For instance, in one of the most analogous cases the Court found on this topic, *Bon Secours-Maria Manor Nursing Care Center, Inc. v. Seaman*, a defendant/petitioner sought a writ of certiorari appealing an order disqualifying its counsel, Quintairos, Prieto, Wood & Boyer, P.A. ("Quintairos"). 959 So. 2d 774, 774-75 (Fla. 2d DCA 2007). There, a plaintiff was first represented by a partner and associate with the law firm of Santa Lucia & Thomas, P.A. ("SL & T"), where Robert

Santa Lucia was a first name partner but did no active work on the plaintiff's case. *Id*. at 775. SL & T was later dissolved and Mr. Santa Lucia then partnered with Quintairos. *Id*. The former SL & T associate who inherited the case continued to represent the plaintiff and moved to disqualify the Quintairos law firm when his old name partner joined that firm.

There, with this analogous set of facts, the court did not even consider whether subsection (a) applied, but rather limited its analysis to subsection (b). The court found that Rule 4–1.10 "require[s] the [ ] court to determine—as a factual matter— whether Mr. Santa Lucia had actual knowledge of client confidences that would be imputed to the Quintairos law firm." *Id*. at 778. In granting Bon-Secours' petition for writ of certiorari and quashing the order disqualifying its counsel, the court held that respondent's "motion merely contained the bald assertion that Mr. Santa Lucia 'ha[d] knowledge of confidential matters concerning Plaintiff's side of this case.'" *Id*. The court also noted that

> [t]he circuit court apparently placed great weight on Mr. Santa Lucia's role as the "first named partner" in [ST & L], the law firm that had previously represented Ms. Seaman. Although Mr. Santa Lucia's position in his former law firm was consistent with the acquisition of confidential and material information about Ms. Seaman's case, *it was equally consistent with his having obtained only cursory and limited information that did not involve any client confidences.*

*Id*. at 779 (emphasis added).

Furthermore, the district court found that the only evidence as to whether Mr. Santa Lucia acquired confidential information about Ms. Seaman's claims was the associate's contention that: "[Mr. Santa Lucia] also has knowledge, whether he

remembers it or not, regarding trial strategy, because I talked to him about what I intended to do." Finding this insufficient, the Second District Court of Appeal of Florida quashed the circuit court's order disqualifying the Quintairos law firm.

This application of Rule 4-1.10 certainly undermines Plaintiffs' theory here that Mr. Diaz's prior attorney-client relationship with Mr. Santaella forecloses his new firm, DRT, from separately representing the Defendants. We, like the Court in *Bon-Secours,* are dealing with a record that shows that Mr. Diaz also only had cursory and limited information about Mr. Santaella's case and not enough to say that he ever received actual client confidences while he was with Richey and Diaz. So, his credible testimony, coupled with no contrary testimony or record evidence, precludes us from finding that 4-1.10(b) triggers the law firm's disqualification.

Further support for this conclusion is found in *RJSG Properties, LLC v. Marbella Condo. Developers, LLC*, where a plaintiff moved to disqualify defendant's law firm. 3:08CV302/MCR/EMT, 2009 WL 3581637 (N.D. Fla. Oct. 28, 2009). There, attorney Martin, an associate of the firm Keefe, Anchors, Gordon & Moyle ("KAGM"), represented the defendant. *Id.* at *2. For slightly over a year, Martin had been an associate at the firm Matthews & Hawkins, P.A. ("M&H"). *Id.* During Martin's time with M&H, the plaintiff had hired M&H's name partner, John Hawkins, to form RJSG as a legal entity and to represent it in an action brought in the Circuit Court of the First Judicial Circuit in and for Okaloosa County, Florida. *Id.* RJSG "argue[d] that Martin and KAGM must be disqualified because of Martin's pervious representation of the plaintiffs." *Id.* at *3.

The Court rejected the argument, however, that Rule 1-10(a) governed in this situation because "subdivision (a) operates only among the lawyers *currently* associated in a firm," and therefore, subdivision (b) applied when the issue concerns lawyers who formerly represented a client and moved to a new firm. *Id*. at *5 (citing R. Reg. Fla. Bar 4–1.10 cmt.) (emphasis added). Key to the denial of plaintiff's motion was the plaintiff's failure to satisfy its prima facie case of disqualification through "vague assertions in [plaintiff's] unsealed affidavit and RJSG's other sealed affidavits do not support a different conclusion." *Id*. The court also noted that, "[r]egardless, assuming *arguendo* that RJSG had established a prima facie case, thus causing the burden to shift . . . the court nevertheless concludes that he has satisfied it, based on Martin's affidavit in which he completely disavows having acquired any knowledge of material information regarding RJSG's instant claim." *Id*. So, Rule 1-10(b) was not implicated, and disqualification was not otherwise ordered under Rule 1-10(a).

These authorities belie Plaintiffs' theory that Mr. Diaz's disqualification alone triggers the law firm's disqualification under Rule 4-1.10(a). More is required to disqualify a second law firm that indisputably did not represent Mr. Santaella in the earlier FOGADE litigation. *See State Farm Mutual Auto. Ins. Co. v. Health and Wellness Services Inc.*, No. 18-23123, 2019 WL 6954199, at *3 (S.D. Fla. Dec. 12, 2019) (quoting *Gatton v. Health Coal., Inc.*, 745 So. 2d 510, 511 (Fla. 3d DCA 1999) (finding that Rule 4–1.10(b) applies to "conflict of interest problems which may arise when a lawyer moves from one firm to another")).

The Court must thus agree with DRT that *Rule 4–1.10(b)* governs whether or not it should be disqualified here, separate and apart from Mr. Diaz who is disqualified under Rule 4-1.9. *See also Graham by Graham v. Wyeth Lab'ys Div. of Am. Home Prod. Corp.*, 906 F.2d 1419, 1422 (10th Cir. 1990) (in oft-cited case followed by courts in Florida, Tenth Circuit rejected argument that 1-10(a) was sufficient to trigger disqualification; "the analysis differs according to whether the conflicted lawyer remains with the same firm throughout the prior and current representations, or changes firms. . . . The emphasized language also indicates that paragraph (b) applies when disqualification of the moving lawyer's new firm is sought, . . ."); *Scott v. Higginbotham*, 834 So. 2d 221, 223 (Fla. 2d. DCA 2002) ("Cases involving imputed disqualification of a law firm based on the prior representation of a newly associated attorney are governed by rule 4–1.10(b) of the Rules Regulating the Florida Bar."); *Nissan Motor Corp. in U.S.A. v. Orozco*, 595 So. 2d 240, 242 (Fla. 4th DCA 1992) (denying disqualification despite finding newly associated attorney had attorney-client relationship with former client; "The respondent argues, and we agree, that *State Farm* is distinguishable from the instant case because there the same law firm had represented both sides in the same law suit, whereas here the Schlesinger law firm has not represented both Nissan and the plaintiff, Orozco. Only an associate, who later came to the Schlesinger firm, had previously represented the adverse party. *Instead of involving an interpretation of rule 4–1.9 and the irrebuttable presumption, as State Farm did, this case involves an interpretation of rule 4–1.10(b) and (c).*"); *Dworkin v. Gen. Motors Corp.*, 906 F. Supp. 273, 278 (E.D. Pa. 1995) ("Rule 1.10(a) is

not applicable in this case. *See Graham v. Wyeth Lab., . . . see also* Rules of Professional Conduct Rule 1.10 cmt. ("Paragraph (a) operates only among lawyers currently associated in a firm."). In the instant case, London has switched firms, so the situation is governed by Rule 1.10(b).").

Focusing then on Rule 1-10(b), we must apply the well-established test in Florida for the law firm's disqualification under this Rule, which again provides that "in order to establish a prima facie case for disqualification, the moving party must show that the newly associated attorney acquired confidential information in the course of the attorney's prior representation." *Scott v. Higginbotham*, 834 So. 2d at 223 (citing *Gaton,* 745 So.2d at 511; *Koulisis v. Rivers,* 730 So.2d 290, 292 (Fla. 4th DCA 1999)). If the moving party meets this burden, the burden shifts to the responding law firm whose disqualification is sought to show that the newly associated attorney has no knowledge of any material confidential information. *Koulisis*, 730 So. 2d at 292.

Furthermore, the comment to Rule 4–1.10 explains that:

Subdivisions (b) and (c) operate to disqualify the firm only when the lawyer involved has *actual knowledge* of information protected by rules 4–1.6 and 4–1.9(b). *Thus, if a lawyer while with 1 firm acquired no knowledge or information relating to a particular client of the firm and that lawyer later joined another firm,…the second firm is [not] disqualified from representing another client in the same or a related matter even though the interests of the 2 clients conflict.*

R. Reg. Fla. Bar 4–1.10 comment (emphases added).

Here, the moving party has not shown that Mr. Diaz actually acquired confidential information in the course of Mr. Richey's and Richey & Diaz's

representation of Mr. Santaella in the Prior Litigation.  Plaintiffs, in none of their filings, are able to point to any specific confidential information Mr. Diaz might have acquired in the Prior Litigation.  At best, Plaintiffs, in an exhibit titled a "Declaration of Juan Santaella in Support of Motion to Disqualify…" state, "Mr. Diaz met with me…[and] I discussed my knowledge of the relevant facts and shared confidential information." [D.E. 146, Exhibit A.].  He expanded on that at the evidentiary hearing, but could not recall any specifics beyond this level of generality.

We assume, however, that this is still enough prima facie evidence to satisfy Plaintiffs' initial burden under the Rule.  DRT then has to meet its burden of showing that "[Diaz] did not actually acquire confidential information material to this case." *Philip Morris USA Inc. v. Caro*, 207 So. 3d 944, 950 (Fla. 4th DCA 2016) (reversing denial of disqualification motion under Rule 4-1.10(b) where former counsel's conclusory affidavit failed to meet that burden in substantially related matter).  If the newly associated lawyer meets that burden, then the Court must make factual findings after an evidentiary hearing and "examine the matters dealt with by Attorney [Diaz] during his tenure at [Richey and Diaz] and the depth of his involvement. Disqualification . . . under Rule 4–1.10(b) would be appropriate should the trial court find that Attorney [Diaz] had significant involvement with [FOGADE litigation] while with [Richey and Diaz]. . . . ." *Balaban v. Philip Morris USA Inc.*, 240 So. 3d 896, 900 (Fla. 4th DCA 2018) (remanding grant of motion that applied earlier decision in *Caro* due to need for further factual analysis; "in a situation where the conflicted attorney had little or no involvement with the matter or matters that

created the conflict, had little contact with other firm attorneys working on them"
then disqualification was not required under Rule 4-1.10(b)).

Here the Court conducted the evidentiary hearing required by the Rule, and
finds that Mr. Diaz did not involve himself with Mr. Santaella's case and had little
substantive contact with either Mr. Richey or Mr. Santaella related to the case.  He
credibly testified "I never sat down with Mr. Santaella.  I never assessed his case.  I
didn't have any conversations with [him] about his case.  I never worked on his case."
[D.E. 209 at 23.]  Neither before, during, nor after this hearing did Plaintiffs provide
any specific factual evidence to rebut this testimony aside from the aforementioned
conclusory statement in Plaintiffs' Exhibit A.

The record evidence supports Mr. Diaz's testimony.  Plaintiffs did not dispute
in their briefs or at the hearing that Mr. Richey was in charge of the case and handled
the day-to-day Court proceedings in the Prior Litigation.  And the Court's review of
the record in that case yields the same conclusion.  The Past Litigation involved a
great deal of work, starting with temporary restraining order and preliminary
injunction proceedings, that generated hundreds of docket entries.  Yet, Mr. Diaz did
not file even a motion for enlargement of time for Mr. Richey.  More substantively,
the minutes of every hearing reflect that Mr. Richey and Holland & Knight appeared
regularly for the defendants, including Mr. Santaella, but Mr. Diaz never did.  This
lengthy record, coupled with his credible testimony, lead to our conclusion that his
limited role as partner to Mr. Richey did not give rise to his receipt of any actual
client confidences under Rules 1.6 or 1.9.  Even though the Rule contemplates a broad

interpretation of what those confidences could be, *Koulisis,* 730 So. 2d at 292 ("The scope of information protected by Rule 4-10(b) is broad"), it requires some showing that the lawyer had access to some confidential information related to the client's representation, which a lawyer's work product on a case would normally include. *Id.* (reversing denial of motion where former staffer was shown to have had lead responsibility for lawyers handling litigation; staffer and new law firm disqualified).

Therefore, this Court finds that Mr. Diaz had no tangible work product in the Past Litigation nor any direct involvement with Mr. Santaella's representation.  So he did not obtain confidential information about his firm's representation of Mr. Santaella "other than [that] he can run quickly from a table." [D.E. 209 at 113 (recalling incident where Mr. Diaz, in Mr. Richey's absence, called to attend to a confrontation involving Mr. Santaella in firm offices)].  In a light most favorable to Plaintiffs, the evidence in our case is analogous to the record presented in *Bon Secours*, where the Second District Court of Appeal found insufficient evidence, beyond bald assertions, to prove that a former partner actually acquired material and confidential information of a firm client. 959 So. 2d at 778.  That was not enough to disqualify a former lawyer's new law firm, and neither is it enough to disqualify Mr. Diaz's new firm.

To reiterate, Mr. Diaz did not acquire any knowledge or information relating to Mr. Santaella.  Mr. Diaz, later and unrelatedly, then joined DRT.  As the Eleventh Circuit has reasoned, "there must exist a reasonable possibility that some specifically identifiable impropriety did in fact occur." *Freund v. Butterworth*, 165 F.3d 839, 864–

65 (11th Cir. 1999).  The relevant case law, rule, and its comment make clear that, under these facts, DRT (as opposed to Mr. Diaz) should not be disqualified from representing another client in the same or a related matter even though the interests of the two clients conflict.

Turning to Plaintiffs' other argument for disqualification of DRT, the Court rejects Plaintiffs proposition that "[o]nce the former client proves that the subject matters of the present and prior representations are [sic] "substantially related," an irrebuttable presumption is raised that [sic] "relevant confidential information was disclosed during the former period of prior representation" for the purposes of Rule 4–1.10.  [D.E. 197 at 6-7 (quoting *Morgan Stanley DW, Inc. v. Kelley & Warren, P.A.*, 02-80225-CIV, 2002 WL 34382748 at *1 (S.D. Fla. May 10, 2002))].  Under Florida law, however, "[t]he irrefutable presumption only applies in the case of a direct attorney-client relationship as governed by rule 4–1.9, *not in the case of an imputed disqualification as governed by rule 4–1.10.*" *Higginbotham*, 834 So.2d at 224 (citing *Gaton*, 745 So.2d at 511; *Koulisis*, 730 So.2d at 293) (emphasis added).

Apart from the Florida cases discussed, other cases presenting this unique set of circumstances have reached the same result.  In a federal bankruptcy case originating in Utah, the Tenth Circuit affirmed an order disqualifying an individual lawyer based on his prior representation of a debtor's principal while employed at a different law firm, involving substantially related matters although not involving the bankruptcy proceeding itself. *SLC Ltd. V v. Bradford Grp. W., Inc.*, 999 F.2d 464, 466 (10th Cir. 1993 ("Previously, Harris had practiced with Watkiss & Saperstein and

had represented Loran in several bankruptcies and loan workouts involving partnerships and properties different from those in the instant case."). The individual lawyer left that law firm and moved to a different firm, which firm was retained to represent a creditor in the debtor's latest bankruptcy proceeding. *Id.* The Circuit Court agreed that the lawyer was properly disqualified from this new representation for a different client under Rule 1.9 given his prior direct attorney-client relationship with the debtor's principal.

With respect to the lawyer's new firm, however, the panel found that disqualification was not warranted under Rule 1.10(b) because the lawyer's prior work for the debtor's principal did not involve the specific debtor at issue in the bankruptcy action. Thus, notwithstanding the prior direct relationship, for purposes of this Rule he had not acquired confidential information relating to the debtor at issue and thus the elements required for disqualification of the new law firm had not been satisfied. The district court's order disqualifying the law firm was thus reversed, and only the lawyer himself was precluded from representing the creditor in this bankruptcy proceeding. Specifically, the Court found:

> Under this functional analysis [following Utah's adoption of the ABA Model Rule 1.10 superseding the Model Code], imputed disqualification of a law firm is determined on the facts of the particular situation and is driven in part by the extent to which the attorney involved had access to information about his former client. Thus, although the burden remains with the firm whose disqualification is sought, a firm is disqualified only when the attorney involved had actual knowledge of material information protected by Rules 1.6 and 1.9(b).
>
> An individual attorney's continuing duty of loyalty to his client may prevent him from taking an adverse position, but this would not extend to his new firm as a whole. The Utah Rules explicitly reject as

"unrealistic" the presumption that a partner in a law firm has access to all the confidences of all the firm's clients, and dismiss the Model Code's "appearance of impropriety" standard as "question-begging."

\* \* \*

Our reading of the record confirms that the information [lawyer] Harris had acquired in his representation of [debtor principal] Loran is not material to Loran's current litigation with [creditor]. Thus, it was appropriate for the bankruptcy court to disqualify Harris without imputing that disqualification to [lawyer's new law firm].

*Id.* at 468-69.

In reaching this conclusion, the Tenth Circuit acknowledged that earlier Model Code caselaw involving similar facts came out differently under the Code and were no longer applicable once Utah (like Florida) adopted the Model Rules:

This represents a change from the reasoning that we followed in [*Smith v. Whatcott,* 757 F.2d 1098 (10th Cir. 1985)], and on which the district court relied in conducting its analysis on appeal. In *Whatcott* we held that when a court concludes that the prior and current representations are substantially related it gives rise to an irrebuttable presumption that the attorney who has changed sides had access to the confidences of all of the clients of his former firm, and that he has shared that information with his new partners.

*Id.* at 468.

Also, significantly, the Tenth Circuit was applying the reasoning in its earlier decision in *Graham* and only applied Rule 1.10(b) to such a circumstance, rather than Rule 1.10(a) as Plaintiffs argue here. *Id.* at 467 ("In *Graham v. Wyeth Laboratories,* 906 F.2d 1419 (10th Cir.1990), we held that four elements must be satisfied before the law firm of an attorney who has changed firms can be disqualified under Rule 1.10(b)."). And in doing so, the Court found that these circumstances required

disqualification of only the lawyer who had a Rule 1.9 conflict, rather than the law firm under Rule 1.10(b).

This analysis is entirely consistent with how we read Florida's current Rules, with the same limitations in Rule 1.10 that relate to the law firm's disqualification only upon a finding that the tainted lawyer acquired confidential information about the client or his representation.  In contrast with those cases, we find that Mr. Diaz never acquired that information so subsection (b) of the Rule cannot impose disqualification on his new law firm.  *Compare Nissan,* 595 So. 2d at 244 (denying disqualification where *Graham* "supports the trial court's decision in the instant case to make a factual determination regarding whether Buechele himself had any confidential information [he did not] and whether the attorneys in the Schlesinger firm acquired knowledge through Buechele regarding his prior client, Nissan [they did not])"; *Solomon v. Dickison*, 916 So. 2d 943, 945 (Fla. 1st DCA 2005) (reversing order disqualifying lawyer's new law firm under Rule 1.10(b) because "conflicting testimony clearly creates a dispute that required the trial court to determine whether the information received by Cressman was protected and 'material to the matter,' rather than base its determination on the application of the irrefutable presumption controlling an analysis under Rule 4–1.9, which is inapplicable to an analysis under Rule 4–1.10(b)."), *with ATC Logistics Corp. v. Jackson*, 168 So. 3d 292, 295 (Fla. 1st DCA 2015) (affirming disqualification of newly-acquired lawyer and new law firm under Rule 4-1.10(b) where trial judge found lawyer discussed legal strategy with other lawyers in litigation for former client, analyzed the legal issues involved, and

actually drafted the summary judgment motion; "this work product is information relating to the representation of [former client]. This was sufficient to show that [lawyer] acquired confidential information."); *Gaton,* 745 So. 2d at 511 (affirming disqualification of newly-acquired lawyer and new law firm under Rule where former client's lawyer was privy to "'extensive background on all aspects of the case,' 'mental impressions on the entire matter,' 'strategies and how they impacted the future of the case,' and 'overall thoughts regarding liability, damages, and discovery of the case as a whole.' This was sufficient to meet [former client's] burden of proof [under Rule 4-1.10(b)]); *Falvey v. A.P.C. Sales Corp.*, 185 F.R.D. 120, 126 (D.R.I. 1999) (granting disqualification of newly-acquired lawyer and new law firm where lawyer's previous work for client included the task of researching the liability issues and retaining and working with expert for client; lawyer's knowledge was enough to be confidential information regarding the representation so Rule 1.10(b) was triggered to disqualify him and his new law firm).

Finally, it bears repeating that granting Plaintiffs' motion to disqualify the entire DRT firm is a drastic measure based on the facts of the case as they are: "Indeed, resort to so drastic a measure would not only be unwise, but would also set disturbing precedent. If the [Plaintiffs'] rationale were accepted, imputation and consequent disqualification could continue ad infinitum. It is not surprising, then, that the courts have carefully limited their travels in this area." *Am. Can Co. v. Citrus Feed Co.,* 436 F.2d 1125, 1128-29 (5th Cir. 1971).

We acknowledge that this result may be a pyrrhic victory for Defendants. Defendants may conclude that DRT without Diaz is not what they bargained for. But that is a strategy decision for Defendants to make in deciding whether to continue to waive any conflict in this case related to Mr. Diaz's prior relationship with Richey and Diaz. Under Florida's Rules Regulating the Florida Bar, they cannot have both in this case. Mr. Diaz cannot represent Defendants against his former client, either as counselor behind the scenes or in Court proceedings of any stripe. DRT's other lawyers can, however, because it is undisputed that DRT never represented Mr. Santaella. DRT is thus Ordered to segregate Mr. Diaz entirely from any further involvement or knowledge about this case. But other counsel for DRT may continue to represent Defendants with their ongoing consent.

## III.   CONCLUSION

For the foregoing reasons, Plaintiffs' motion to disqualify Defendants' counsel Mr. Diaz and the law firm of Diaz, Reus & Targ, LLP is **GRANTED** as to the disqualification of Mr. Diaz and **DENIED** as to the law firm of Diaz, Reus & Targ, LLP.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 13th day of April, 2023.

EDWIN G. TORRES
Chief Magistrate Judge