UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-20201-CV-GAYLES/TORRES

BANCOR GROUP INC., and
STITCHING PARTICULIER FONDS
FRANEKER, derivatively on behalf of
EASTERN NATIONAL BANK, N.A.,

   *Plaintiffs*,

v.

GABINA RODRIGUEZ,
LOUIS FERREIRA,
CESAR GOMEZ VALERO,
KEITH PARKER,
CARLOS RODRIGUEZ, and
GUSTAVO MACIAS,

   *Defendants*.
_____/

## REPORT AND RECOMMENDATION

On January 21, 2022, the Honorable Darrin P. Gayles referred all pretrial matters to the undersigned for disposition. [D.E. 9]. This report and recommendation therefore concerns the parties' motions for summary judgment. [D.E. 261, 263, 264].[1] For the following reasons, Plaintiffs' motion for partial summary judgment should be **DENIED**, Defendants' motion for summary judgment should be **DENIED**, and Defendant Louis Ferreira's motion for summary judgment should be **GRANTED in part** and **DENIED in part**.

---

[1] Unredacted versions of two of these motions have been filed under seal with this Court's leave at D.E. 259 and 268.

## I. BACKGROUND

This is a shareholder derivative action in which two minority shareholders have sued current and former directors of Eastern National Bank, N.A. (the "Bank") for breaches of their fiduciary duties of care and loyalty. We have reached the summary judgment phase of the case. Accordingly, Plaintiffs have moved for partial summary judgment on nine of Defendants' affirmative defenses. Defendants likewise have moved for summary judgment on the claims alleged against them, and Defendant Ferreira has separately moved for summary judgment under a few different theories due to the fact that he did not join the Bank until October 2019 – months (and occasionally years) after some of the conduct alleged in Plaintiffs' complaint. Each argument will be explored in turn.

## II. ANALYSIS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1). "On summary judgment the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the

motion." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 597 (1986).

In opposing a motion for summary judgment, the nonmoving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The existence of a mere "scintilla" of evidence in support of the nonmovant's position is insufficient; there must be evidence on which the jury could reasonably find for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, or upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. Of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996) (citing *Matsushita*, 475 U.S. at 592-94).

At the summary judgment stage, the Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. In making this determination, the Court must decide which issues are material. A material fact is one that might affect the outcome of the case. *See id.* at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). "Summary judgment will not lie if the dispute about a material fact is

3

'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Ibid.*

### A. *A genuine dispute of material fact exists regarding whether the business judgment rule shields Defendants' conduct. Thus, Defendants are not entitled to summary judgment on this basis.*

Defendants first submit that they effectively have immunity in this derivative lawsuit by virtue of the "business judgment rule." As we discussed at the motion-to-dismiss phase, [D.E. 67], Plaintiffs sufficiently alleged facts to circumvent the business judgment rule. *See* Fla. Stat. § 607.0830; *see generally Cottle v. Storer Commc'n, Inc.*, 849 F.2d 570, 574 (11th Cir. 1988) ("Under the business judgment rule directors are presumed to have acted properly and in good faith, and are called to account for their actions only when they are shown to have engaged in fraud, bad faith or an abuse of discretion."). Now Defendants submit that Plaintiffs are unable to support those allegations with admissible evidence and so, in Defendants' view, summary judgment should be granted in their favor. We disagree.

Consider, for example, some of the communications between Defendants and the Bank's regulator – the United States Department of the Treasury's Office of the Comptroller of the Currency (the "OCC") – that this Court reviewed while adjudicating a privilege dispute between Plaintiffs, Defendants, and the OCC. [D.E. 356]. In its Report of Examination dated March 4, 2019, the OCC stated that the Bank's leadership was "critically deficient" due in part to the fact that the Bank was led by an "ineffective" and "dominant" chairperson (i.e., Defendant Gabina Rodriguez) and a "passive" board of directors. And only two months after this admonition, the

4

same board of directors unanimously approved a "substantial increase" to Defendant Gabina Rodriguez's salary "without conducting and documenting due diligence to support the decision."

On July 29, 2020, the OCC expressly stated that Defendant Gabina Rodriguez's past actions demonstrated a "bias toward the Venezuelan government and its instrumentalities . . . [that was] contrary to the interests of the Bank." And in a separate letter dated the same day, the OCC found that Defendant Cesar Gomez Valero made a "material misrepresentation or omission" to the OCC regarding his position within the Venezuelan government. The OCC was accordingly concerned that the "divided loyalties" of directors with ties to the Venezuelan government could result in the prioritization of Venezuelan interests above the interests of the Bank, which could in turn result in the "failure" of the Bank and a "loss" to the federal deposit insurance fund.

In the Consent Order issued by the OCC in 2020, the regulator found that the Bank's board of directors had not "adopted and implemented comprehensive corporate governance including Board oversight, which has resulted in unsafe and unsound compensation, benefits, and travel-related expenses, ineffective audit committee oversight, and insufficient documentation of decision-making at Board and other committee meetings." We could continue with these examples but suffice it to say at this juncture that a genuine dispute of material fact exists regarding whether Defendants are entitled to the protection of the business judgment rule because that rule is not intended to serve as a shield for those who have acted in their

own self-interest.  *See, e.g., DiSorbo v. American Van Lines, Inc.*, 354 So. 3d 530, 545-46 (Fla. 4th DCA 2023).  In other words, admissible evidence exists in the record to prove that Defendants have managed the Bank in a way that served their own financial and/or political interests at the expense of the Bank.  Thus, Defendants' argument regarding the applicability of the business judgment rule is unpersuasive at this phase of the case.  *See United States v. De La Mata*, 266 F.3d 1275, 1297 (11th Cir. 2000) (explaining that the business judgment rule protects only "disinterested directors"); *see also Blutrich Holdings, Inc. v. Ten Museum Park Residential Condo. Ass'n, Inc.*, No. 21-cv-23913, 2022 WL 18956177, at *6 (S.D. Fla. Dec. 30, 2022) (noting that "application of the business judgment rule is a question of fact inappropriate at the summary judgment stage"); *Royal Harbour Yacht Club Marina Condo. Ass'n, Inc. v. Maresma*, 304 So. 3d 1268, 1270 (Fla. 3d DCA 2020) (reversing entry of summary judgment because "[t]he question of reasonableness under the business judgment rule is a question of fact."); *Post-Confirmation Committee for Small Loans, Inc. v. Martin*, No. 13-cv-195, 2016 WL 3251408, at *11 (M.D. Ga. June 13, 2016) (denying motion seeking summary judgment on business judgment rule grounds because "the Court cannot indisputably find that there was a conflict of interest without the resolution of contested facts").  This motion should be DENIED.

> **B.    *Record evidence indicates that Plaintiffs can prove loss causation.  Thus, Defendants are not entitled to summary judgment on this basis*.**

Defendants next submit that they are entitled to summary judgment because Plaintiffs cannot prove that any of Defendants' alleged breaches of their fiduciary

6

duties caused harm to the Bank. Florida law undoubtedly requires Plaintiffs to prove that Defendants' fiduciary breaches proximately caused damage to the Bank. *See, e.g., Silver Crown Investments, LLC v. Team Real Estate Mgmt., LLC*, 349 F. Supp. 3d 1316, 1331 (S.D. Fla. 2018); *Columbia Bank v. Turbeville*, 143 So. 3d 964, 969-70 (Fla. 1st DCA 2014). But the merit of their absence-of-loss-causation-evidence argument appears to be largely contingent on the success of their separate attacks on the admissibility of testimony from Plaintiffs' expert witness C. Wayne Crowell. That is the case because Mr. Crowell, having reviewed the Bank's financial records in addition to other evidence, intends to opine about the ways in which Defendants' breaches have caused financial harm to the Bank. But this Court denied those challenges, holding that Mr. Crowell's testimony *is* admissible. [D.E. 356].

Moreover, evidence exists in the record to show that, while the Bank was operating at a loss, Defendants declined to hold annual shareholder meetings, which apparently resulted in the retention of their seats on the board and thereby provided them with compensation that was remarkably higher than what their colleagues at peer banks were earning. Indeed, to reiterate, the OCC specifically found that at least some of Defendants received "unsafe" and "unsound" compensation from the Bank. Thus, at this juncture, a genuine dispute of material fact exists regarding whether Defendants' breaches proximately caused damage to the Bank. This motion should therefore be DENIED.

### C. *Plaintiffs are not asking this Court to enforce a regulatory consent order. Thus, Defendants are not entitled to summary judgment on non-justiciability grounds.*

Defendants' next argument fares no better because it defies both logic and reality. They submit that, because only federal banking agencies are authorized by 12 U.S.C. § 1818(i)(1) to enforce the terms of a consent order through litigation in the federal courts (and because Plaintiffs are indisputably not a federal banking agency), this Court lacks jurisdiction to adjudicate Defendants' compliance with the consent orders issued against the Bank by the OCC. But Plaintiffs are not, as Defendants suggest, seeking to enforce the terms of a consent order through this litigation. Instead, a theory of breach alleged by Plaintiffs is that Defendants deliberately (or in a grossly negligent fashion) failed to comply with two consent orders issued by the Bank's regulator, which in turn harmed the Bank in a cognizable way. Put differently, the consent orders are not woven into the fabric of this case because Plaintiffs want to force Defendants' compliance with the terms therein; the consent orders are woven into the fabric of this case because they are evidence that Defendants may have breached the fiduciary duties that they owe to the Bank. This motion should be DENIED.

### D. *Defendant Louis Ferreira cannot be held liable for conduct that occurred before he joined the Bank; however, several of the theories of fiduciary breach that he seeks to dispose of through summary judgment are not alleged against him and it would therefore be inappropriate to grant him all of the relief he seeks.*

It is undisputed that Defendant Ferreira did not join the Bank in any capacity until October 2019. The complaint classifies theories of fiduciary beach temporally;

8

however, a couple of these theories are alleged against Defendant Ferreira even though the parties now agree that he was not at the Bank when the alleged breaches took place. More specifically, Defendant Ferreira asks the Court to short-circuit five of Plaintiffs' theories of fiduciary breach at the summary judgment phase: (1) liability relating to the opening of the Banco de Venezuela correspondent account; (2) liability relating to the conditions giving rise to the Consent Order issued by the OCC in 2018; (3) liability relating to approving a Restricted Stock Unit ("RSU") equity compensation plan in December 2018; (4) liability relating to expanding the RSU plan in March 2019; and (5) liability relating to sending the RSU plan for regulatory approval in July 2019. *See* [D.E. 264 at 7].

The problem with Defendant Ferreira's argument is that only the latter two theories of breach are alleged against him. Indeed, a review of the complaint makes it clear that Defendant Ferreira is excluded from the list of Defendants who are alleged to have committed fiduciary breaches in 2018. [D.E. 59 at ¶¶ 107, 116]. The Court therefore cannot grant summary judgment to Defendant Ferreira for claims that are not alleged against him. In other words, because Defendant Ferreira is not being sued for breaching any fiduciary duties in 2018, we cannot grant him relief on claims that do not exist. *See Smith v. Books-A-Million*, 398 F. App'x 437, 437-38 (11th Cir. 2010) (citing *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974-75 (11th Cir. 2008)). Insofar as the first three theories of breach outlined above are concerned, his motion is due to be DENIED in part.

9

But a different outcome is mandated for the latter two theories of breach because Plaintiffs allege two theories of breach against Defendant Ferreira that took place in early 2019 – months before his undisputed start date. Plaintiffs allege that, in 2019, Defendant Ferreira breached his fiduciary duties by approving an expansion of the RSU plan. [D.E. 59 at ¶¶ 108(f), 117(e)]. Plaintiffs do not dispute that this expansion took place in March 2019, and they do not dispute that Defendant Ferreira was not among the directors who voted to expand the RSU plan. This theory of breach therefore fails against Defendant Ferreira because it is undisputed that Defendant Ferreira did not engage in the conduct that constituted the alleged breach. *See, e.g., Silver Crown Investments*, 349 F. Supp. 3d at 1331 (reciting the elements of breach of fiduciary duty under Florida law).

Plaintiffs likewise allege that, in 2019, Defendant Ferreira breached his fiduciary duties by failing to obtain "prior approval" from OFAC and the OCC regarding the aforementioned expansion the RSU plan. [D.E. 59 at ¶¶ 108(e), 117(d)]. But again, Plaintiffs agree that Defendant Ferreira was not employed in any role at the Bank when these alleged breaches took place and therefore could not have engaged in the conduct that constituted the alleged breach. *See, e.g., Silver Crown Investments*, 349 F. Supp. 3d at 1331. Thus, this theory of breach similarly fails as a matter of law.

Regarding these two discrete theories of breach, Defendant Ferreira's motion for summary judgment is due to be GRANTED in part.

### E.  The Court has subject matter jurisdiction over the claims against Defendant Louis Ferreira.  Thus, he is not entitled to summary judgment on this basis.

Defendants have previously challenged this Court's subject matter jurisdiction.  And we previously held that the Court has subject matter jurisdiction pursuant to the Edge Act, 12 U.S.C. § 632.  [D.E. 175, 240].  Defendant Ferreira now challenges the Court's subject matter jurisdiction again, arguing that the claims alleged against him are too attenuated from the facts providing the Court with Edge Act jurisdiction for this lawsuit to be maintained against him.  Plaintiffs disagree, and they submit instead that subject matter jurisdiction may properly flow from the federal supplemental jurisdiction statute, which provides in relevant part that:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. 1367(a).

We agree with Plaintiffs that, given the context of the allegations against Defendants, the claims against Defendant Ferreira "derive from the same nucleus of operative fact" and are such that Plaintiffs "would ordinarily be expected to try them all in one judicial proceeding."  *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 348-49 (1988); *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 455 (11th Cir. 1996) (holding that courts must look to whether state-law claims arise from the "same facts" or "involve similar occurrences, witnesses or evidence").  Here, the claims against Defendant Ferreira are distinct largely because he arrived at the party later than his

11

co-defendants. But he did not join the Bank in a vacuum. Rather, he joined the Bank at a time of undisputed financial distress (and apparent regulatory non-compliance) that was years in the making.

The recent history of the Bank – including but not limited to its foreign banking operations – is therefore exceptionally relevant to the allegations that Defendant Ferreira breached his fiduciary duties. Thus, there will be considerable overlap in the evidence and judicial resources will be preserved through the exercise of supplemental jurisdiction. This motion should be DENIED.

### F.  *Plaintiffs are not entitled to summary judgment on nine of Defendants' alleged defenses.*

Beginning on page 42 of their answer, which was filed on August 15, 2022, Defendants list 17 defenses. [D.E. 105 at 42-45]. Plaintiffs take issue with some of these defenses, which we categorize into three groups.

First, Plaintiffs seek summary judgment on defenses 1 and 2 because they submit that Defendants cannot prove these defenses by a preponderance of the evidence. Defense 1 states that Plaintiffs' claims are barred, in whole or in part, by the doctrines of laches, equitable estoppel, and unclean hands. Defense 2 states that Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' own actions, omissions, and/or negligence.

Second, Plaintiffs seek summary judgment on defenses 4, 6, 8, 9, 11, and 14 because these defenses are "denials" rather than "affirmative defenses." Nobody disputes that these defenses effectively constitute denials of liability for Plaintiffs' claims as opposed to affirmative defenses.

12

Third, Plaintiffs seek summary judgment on defense 13 because, in their view, claiming that this derivative lawsuit was instigated with an "improper motive" cannot legally absolve Defendants of liability for Plaintiffs' claims. We examine each category of defenses below.

Regarding defenses 1 and 2, we are not persuaded that Plaintiffs have carried their burden of showing that Defendants will be unable to prove these defenses at trial. "[I]t is never enough simply to state that the non-moving party cannot meet its burden at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Instead, "a moving party must point to specific portions of the record to demonstrate that the nonmoving party cannot meet its burden at trial." *Eli Research, LLC v. Must Have Info Inc.*, No. 13-cv-695, 2015 WL 5934632, at *3 (citing *United States v. Four Parcels of Real Property in Greene & Tuscaloosa Counties in the State of Ala.*, 941 F.2d 1428, 1438 n.19 (11th Cir. 1991)). If a movant makes the required showing, "[t]he defending party must rely on or submit record evidence in support of the purported affirmative defenses to create a genuine issue of material fact preventing the entry of summary judgment." *Meth Lab Cleanup, LLC v. Spaulding Decon, LLC*, 2015 WL 4496193, at *7 (M.D. Fla. July 23, 2015) (citing *Real Estate Mortg. Network, Inc. v. Cadrecha*, 2012 WL 1581967, at *2 (M.D. Fla. Apr. 30, 2012)). But Plaintiffs offer only eight *undisputed* facts to support their argument that Defendants cannot prove laches, equitable estoppel, unclean hands, or comparative fault in a way that might defeat one or more of Plaintiffs' claims – at least in part – and none of these undisputed facts coherently illustrate how the foregoing legal doctrines are

13

inapplicable in this case. *See* [D.E. 260 at ¶¶ 4, 7, 9, 17, 24, 31, 41, 42]. Indeed, even if we were to accept all of the facts referenced in Plaintiffs' statement of material facts as the gospel truth, we would still be hesitant to agree that these facts effectively preclude Defendants from proving their first two defenses because many of these "facts" appear to be irrelevant to the doctrines at issue. In other words, the record cited by Plaintiffs does not persuade the Court that Defendants will be unable to prove these defenses by a preponderance of the evidence; accordingly, the motion fails.

Regarding defenses 4, 6, 8, 9, 11, and 14, which Plaintiffs criticize for being "denials" rather than "affirmative defenses," we cannot agree that this constitutes a sound basis for awarding summary judgment. First, these defenses never purport to be affirmative defenses. In fact, the Court notes that these defenses can be found within a section of Defendants' answer titled "DEFENSES AND AFFIRMATIVE DEFENSES." [D.E. 105 at 42]. Second, Federal Rule of Civil Procedure 8 permits Defendants to plead their denials alongside their affirmative defenses. Thus, reviewing the substance of Plaintiffs' motion, we are persuaded that they have simply chosen to style a motion to strike an insufficient defense pursuant to Rule 12(f) as a motion for partial summary judgment under Rule 56. This is improper and unpersuasive because Rule 12(f)(2) provides that such motions must be made within 21 days of the filing of the answer and Plaintiffs waited eight months to raise this issue for the Court's consideration. *See, e.g., Andreu v. Hewlett-Packard Co.*, No. 15-cv-23270, 2016 WL 1697088, at *4 (S.D. Fla. Apr. 20, 2016) (noting that a plaintiff

"should not be allowed to circumvent the timeliness requirement of Rule 12(f) by simply labeling as a summary judgment motion what is essentially a motion to strike affirmative defenses").

Finally, regarding defense 13, Plaintiffs submit that Defendants' "improper motive" defense should be resolved in their favor because, even if it were true, it could not absolve Defendants of liability in this case. But this argument fails to appreciate that the Federal Rules of Civil Procedure mandate that a "derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association." FED. R. CIV. P. 23.1(a). Thus, if Defendants can prove that Plaintiffs initiated this action with an improper motive – for example, to derive a unique financial benefit that will not be enjoyed by the Bank's other shareholders – then Defendants may be able to procedurally deprive Plaintiffs of their standing to bring this lawsuit because, in theory, Plaintiffs are not similarly situated to the Bank's other shareholders. Plaintiffs last argument for summary judgment therefore fails. This motion should be DENIED.

### III.   CONCLUSION

For the foregoing reasons, Plaintiffs' motion for partial summary judgment and Defendants' motion for summary judgment should both be DENIED. Defendant Louis Ferreira's separate motion for summary judgment should be GRANTED in part and DENIED in part because Plaintiffs cannot prove that Defendant Ferreira breached his fiduciary duties in 2019 by voting to expand the RSU plan or by failing

to obtain prior approval from the relevant federal agencies regarding the expansion of the RSU plan; accordingly, he is entitled to judgment as a matter of law on these two alleged theories of liability.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 5th day of July, 2023.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge