UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:22-cv-20201-DPG

BANCOR GROUP, INC., and STITCHING
PARTICULIER FONDS FRANEKER,
derivatively on behalf of
EASTERN NATIONAL BANK, N.A.,                    **ORAL ARGUMENT REQUESTED**

      Plaintiffs,

v.

GABINA RODRIGUEZ, LOUIS FERREIRA,
CESAR A. GOMEZ VALERO, KEITH PARKER,
CARLOS RODRIGUEZ, and GUSTAVO MACIAS

      Defendants.

_____/

### PLAINTIFFS' MOTION FOR SANCTIONS AGAINST DEFENDANTS AND THEIR COUNSEL UNDER 28 U.S.C § 1927 AND THE COURT'S INHERENT AUTHORITY

Plaintiffs Bancor Group, Inc. ("Bancor") and Stitching Particulier Fonds Franeker ("Franeker") (collectively "Plaintiffs"), derivatively on behalf of Eastern National Bank, N.A. ("ENB" or the "Bank"), by and through undersigned counsel, move for entry of an order imposing sanctions against Defendants Gabina Rodriguez, Louis Ferreira, Keith Parker, Carlos Rodriguez, Gustavo Macías and the law firm of Diaz Reus & Targ ("DRT") (collectively, "Defendants") and in support state as follows.

## INTRODUCTION

There comes a point—a line really—where litigants and their counsel must understand that there is a consequence for simply ignoring the law, repeatedly lying to the Court and to counsel, and otherwise behaving in flagrant violation of their ethical obligations. Defendants and their counsel, DRT, crossed that line some time ago. And, indeed, their lead counsel Michael Diaz was disqualified from this case for it. Undeterred by this disqualification, Defendants and their counsel have persisted in an egregious and unethical pattern of misconduct throughout the life of this case that most recently resulted in the delay of the jury trial set for October 16, 2023. This motion seeks relief for those repeated ethical violations, the most recent of which was motivated by yet another act of self-dealing to the detriment of Plaintiffs and Eastern National Bank and, in breach of the Defendants' fiduciary duties to the Bank.

On October 4th, 2023, at the scheduled calendar call of this matter, this Court asked two simple questions: Are Plaintiffs ready for trial? Plaintiffs responded unequivocally with "Yes, your honor." Are Defendants ready for trial? Defendants responded unequivocally with "Yes, your honor." These two simple questions and the answers that followed gave everyone on the call the impression, including the Court, that the trial was going forward on October 16, 2023. As a result, lead counsel for Plaintiffs canceled previously scheduled college visits with his son (that went forward without him the weekend of October 14th and 15th), as well as a previously scheduled vacation on October 18th-22nd. Plaintiffs principals also canceled family plans and re-booked earlier flights to return home in time for trial. Plaintiffs also flew in an out-of-state lawyer (Gregory Carter, who was previously admitted *pro hac vice* to this case) to Miami to prepare for the October 16th trial date, as well as their expert witness Wayne C. Crowell. These were, of course, the foreseen consequences of respecting and abiding by the Court's scheduled trial date. What was

LEÓN COSGROVE JIMENEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR  |  MIAMI, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

completely unforeseen (and unknown) by the Plaintiffs, however, is that just *two* days before Defendants announced ready for trial, an investor group submitted a notice of change in control of ENB with the OCC. As consideration for the selling of a controlling interest in ENB, the investor group will pay **$2,400,000** to the Board of Directors (*i.e.* four out of five of the Defendants) pursuant to an equity incentive plan that Plaintiffs have sought to enjoin in this lawsuit. In other words, mere days before trial, Defendants entered into a deal in which they would receive **$2.4 million** for selling a controlling interest in Eastern National Bank, while they are simultaneously being sued in this case for over $25 Million for engaging in various acts of self-dealing, including their attempt to receive money under an equity incentive plan, triggered by a change in control.

So, faced with potential and imminent exposure, and knowing that OCC approval for this transaction would take at least three months, Defendants and their counsel decided to seek a delay of the trial. Their chosen method for delay was a last-minute motion challenging the Court's subject matter jurisdiction (the third such motion they filed in this case). On October 14th, 2023, at 10:00 pm, Defendants filed a motion to dismiss purportedly attacking Plaintiffs' "standing." But the motion does not attack standing at all. Instead, Defendants argue a theory of judicial estoppel that was never pled and that they *admitted* lacked any factual or legal support. To be clear, Defendants now concede that the Eleventh Circuit's decision in *Slater v. United States Steel Corp*., 871 F.3d 1174 (11th Cir. 2017)—the case on which Defendants rested their entire motion—is wholly inapplicable here. Moreover, as this motion for sanctions makes clear, Defendants had knowledge of the issues raised in their motion for at least a year before they filed their motion, but waited until the Saturday before a Monday trial to file it after announcing to the Court and the Plaintiffs that they were "ready."

Defendants' eve of trial filing caused this Court to postpone trial for months and severely impairs this Court's ability to adjudicate one of the central issues in this case. Accordingly, Plaintiffs respectfully ask the Court for an Order (1) striking Defendants' pleadings; (2) ordering Defendants and DRT to reimburse Plaintiffs for the expenses and fees they incurred in responding to the frivolous filings referenced in this motion, including Defendants' eve of trial motion to dismiss; (3) ordering Defendants and DRT to reimburse Plaintiffs for the expenses and fees they incurred in preparing for trial between October 4, 2023—when Defendants announced ready for trial—and October 16, 2023—when trial was postponed; (4) ordering Defendants and DRT to reimburse Plaintiffs for the expenses and fees they incurred in briefing this motion for sanctions; and (5) ordering Defendants to deposit the $2.4 million cash award or any other consideration received from the investor group in the Court's registry until the end of this litigation.

## BACKGROUND

As mentioned above and as discussed in detail below, Defendants' eve of trial motion is just the latest example in a pattern of bad faith conduct engaged by Defendants since they retained DRT, including wasting the Court and Plaintiffs' time by causing this Court and Plaintiffs to consider and reconsider patently meritless motions and by threatening Plaintiffs' principals with criminal action for the sole purpose of obtaining an advantage in this civil litigation. It is against this backdrop that the Court should examine Defendants' conduct.

**1. Defendants' History of Bad Faith Behavior**

    a.  <u>Defendants' Countless Baseless Motions and Misrepresentations to the Court</u>

The record in this case demonstrates that Defendants have unreasonably and unethically multiplied these proceedings by filing numerous meritless motions and papers for no other purpose than to disrupt the legal process, harass Plaintiffs' principals, and to delay justice.

LEÓN COSGROVE JIMENEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

*First*, two of the first three filings made by DRT were an expedited motion to stay the case (DE 140) and a "Notice [of] Suggestion that the Court Lacks Subject Matter Jurisdiction" (DE 143). The Court struck the expedited designation to the motion to stay finding that "it appears that the motion (even if merited) *was filed as a means to stall the taking of discovery* in this action under the current Scheduling Order." (DE 141) (emphasis added). The Court also struck the "Notice of Suggestion" stating that it "clearly violates Fed. R. Civ. P. 7 that compels a party requesting a Court order [seeking dismissal] to do so only through a motion filed on the docket." (DE 144).

On the same day, Defendants filed a motion to dismiss for lack of subject matter jurisdiction ignoring previous Court rulings and reversing their position on their motion to stay. While the motion to stay argued that "[t]he dispositive issue in this matter is who controls Mercorp and is eligible to vote its shares," and therefore, the Court should defer to Venezuela and Curaçao courts, *see* (DE 140 at 9), the motion to dismiss argued that "activities conducted abroad play no part" in Plaintiffs' claims, *see* (DE 145 at 3-4). And Defendants filed that motion to dismiss—arguing that the complaint did not involve foreign banking transactions—despite knowing that the Court had previously ruled on Defendants' first motion to dismiss that "the core allegation made by the Minority Shareholders is … *the Venezuelan government used the Bank as its vessel to transfer Venezuelan assets into the United States banking system*." *See* (DE 67 at 17) (emphasis added).[1]

The Court denied Defendants' motion to dismiss, *see* (DE 175; DE 240), and Defendants ultimately withdrew their motion to stay, *see* (DE 224). Plaintiffs, however, were forced to fully

---

[1] This section of the report and recommendation ("R&R") was adopted by the Court in its entirety. *See* (DE 100).

LEÓN COSGROVE JIMENEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

brief those frivolous motions. Defendants also filed two sur-replies disguised as notices of supplemental authority in support of that motion to dismiss, (DE 211; DE 221), which forced Plaintiffs to file two motions to strike (DE 213; DE 225). Defendants withdrew their first "notice," *see* (DE 220), and the Court *expressly* declined to consider their second "notice" because it raised new arguments that had not been first presented to Magistrate Judge Torres, *see* (DE 240 n.2).

*Second*, throughout this litigation, Defendants have had the habit of filing multiple motions or papers seeking the same relief. For example, Defendants filed two motions to exclude the testimony of Adam Smith. *See* (DE 86; DE 267). Their second motion, as found by the Court, "recycle[d] many of their previous arguments" which had already been rejected. (DE 356 at 19). Defendants also filed *three* motions to exclude the testimony of Wayne Crowell. (DE 246; DE 258; DE 279). The Court struck Defendants' first motion, finding that the filing of that motion was "not a proper vehicle to raise the issue and *amounts to a cumulative bite of the apple*." (DE 248) (emphasis added). The Court denied Defendants' second motion to exclude the testimony of Mr. Crowell because it lacked merit, *see* (DE 356 at 17-19), and rejected their third motion to exclude his testimony finding that it merely "repackaged many of their arguments that this Court found unpersuasive..." *Id.* at 23.

Additionally, Defendants filed an untimely purported pre-trial memorandum of law, simply rehashing their motions for summary judgment and their motions in limine—three weeks prior to trial. (DE 391). Plaintiffs were then forced to file a motion to strike that filing which the Court granted finding that Defendants' purported pretrial memorandum was "not necessary, does not raise any unusual questions of law, and was not requested by the Court in advance of trial." (DE 395). Undeterred, Defendants raised these issues *again* during calendar call and during a pre-trial hearing on October 13, 2023. *See* Ex. B at (31:12-24). Defendants *once again* argued that certain

letters from the OCC to Gabina Rodriguez were unfairly prejudicial because they had been rescinded by the OCC. *Id*. ("If they see that document, they see that it was rescinded, how are they going to unring the bell of accusing Ms. Rodriguez…of having favored the interest of the Venezuelan government…"). But this is the exact argument that the Court had already rejected:

> Defendants argue that, even if these documents were not privileged, they should still be excluded because they are irrelevant and their probative value is outweighed by the risk of unfair prejudice. They submit that, because some of the documents have been rescinded by the OCC, the documents are irrelevant and lack probative value. We again disagree. Having reviewed these documents, **we have no doubt that these documents are both highly relevant to and remarkably probative of the central issues in this case**. These documents do not lose all probative value simply because some of them were subsequently rescinded by the OCC…OCC contradictions go to the weight of the evidence—not its admissibility… **[G]iven the importance of this evidence to the central issues in this case, the solution is not to exclude the 31 documents; rather it is to admit the evidence that directly contradicts those documents**.

(DE 356 at 33-34) (emphasis added).[2] Plaintiffs were forced, *once again*, to brief this matter for the Court on the eve of trial. *See* (DE 420).

*Third*, despite this Court's Order warning Defendants that seeking dismissal without motion "clearly violates" the Federal Rules, *see* (DE 144), Defendants went on to seek dismissal without motion *three additional* times. *See* (DE 374 at 10) (asking the Court to "*sua sponte* dismiss the case" in their response to Plaintiffs' objection to the R&R on Plaintiffs' motion for summary judgment); (DE 391 at 14) (asking the Court to dismiss the case in their purported pre-trial memorandum); *see also* Ex. B at (53:17-19) (asking the Court to "dismiss at least the equitable claims on collateral estoppel, and if the Court is so inclined to dismiss the entire case on Article III grounds" during a pretrial hearing).

---

[2] Defendants *expressly* declined to appeal the Magistrate Judge's finding on this issue. *See* (DE 359 at 1) ("[Defendants] file this limited objection *only* to address the application of Rule 26(b)(5)(B) and the Parties' stipulated Confidentiality Order to the Directors' Motion to Strike…") (emphasis added).

LEÓN COSGROVE JIMENEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

*Finally*, Defendants have filed demonstrably frivolous motions and have repeatedly misrepresented the facts of this case to the Court. For example, Defendants filed a motion in limine to exclude all references to Venezuela and its Government from trial. (DE 281). The Court correctly characterized that motion as "absurdity approaching frivolity." (DE 356 at 31). Defendants also sought summary judgment arguing, in part, that the Court lacked jurisdiction to adjudicate this dispute. *See* (DE 263 at 16). The Court found that this argument "defies both logic and reality." (DE 361 at 8). And throughout this case, Defendants have repeatedly—and with impunity—misrepresented the facts of the case to the Court. For example, during a discovery hearing, DRT expressly represented to the Court that:

> What they allege in the complaint is that Gabina Rodriguez has exercised some modicum of control over Eastern National Bank. And there has been *literally* no documents produced by our side that would prove that.

(DE 244-4; 31:14-21) (emphasis added). As the Court is well aware, Plaintiffs possess documents showing "that the Bank's leadership was critically deficient due in part to the fact that the Bank was led by an ineffective and dominant chairperson (i.e., Defendant Gabina Rodriguez) and a passive board of directors." *See* (DE 361 at 4).[3] Plaintiffs also adduced evidence that "Defendant Gabina Rodriguez's past actions demonstrated a bias toward the Venezuelan government and its instrumentalities…[that was] contrary to the interests of the Bank." *Id* at 5.

Plaintiffs have spent inordinate amounts of time and resources responding to these improper filings and correcting the record for the Court.

---

[3] Defendants have now conceded that reports of examination are admissible at trial. *See* Ex. B. at (7:7-12) (…"the reports of examination can come in at least as to notice…")

b.  DRT's Threats of Criminal Action

Along with the filing of multiple patently meritless motions, Defendants have attempted to gain a litigation advantage in this matter by threatening Plaintiffs' principals and other third-party witnesses with criminal action.

In December of 2022, in advance of a meeting of the shareholders of ENB, DRT made calls to the various minority shareholders (or their attorneys) to dissuade them from holding the meeting by threatening that "federal marshalls" would purportedly take action against them if they moved forward with the meeting. Then, DRT began Plaintiffs' corporate representative deposition with the following questions:

> **BY MR. STOMAN [sic]**:
> - State your name for the record, please, sir.
> - Mr. Santaella are you aware of any pending criminal actions against you?
> - Are you aware of any pending grand jury investigations into your actions?
> - Do you know what the Fifth Amendment is?
> - So do you understand that you have certain rights under the Fifth Amendment to the United States Constitution?
> - All right. So, if I ask you something and you realize that your answer may result in criminal prosecution, you have the right to invoke your Fifth Amendment right against self-incrimination. All you need to do is say, "I'll take the Fifth" and I'll move on to my next question, ok?
> - Do you intend to invoke your Fifth Amendment right against self-incrimination at any point in today's deposition?

(DE 305-19; 6:13—8:7) (responses and objections omitted).

Later, Mr. Stroman began the depositions of third-party witnesses Greg Jacobson and Eric Donnelly with the same questions. *See* (DE 305-10; 5:8—6:22); *see also* (DE 305-11; 5:8—6:22). This time, however, DRT had a non-lawyer in the room who they introduced as "the retired head of the FBI's International Corruption Program for Latin America, where he oversaw kleptocracy and money laundering investigations." (DE 305-10; 4:14-21); (DE 305-11; 4:12-18). This non-lawyer later made an appearance at Mr. Juan Santaella's deposition, also.

Finally, during a discussion between counsel related to proceedings in Curaçao, DRT again threatened Plaintiffs with criminal action:



*See* **Exhibit E;** screenshot of text message from E. Stroman to Plaintiffs' counsel.

### 2. Defendants Filed a Frivolous Motion to Dismiss on the Eve of Trial

Against the backdrop of their misconduct throughout the entirety of this case, two days before calendar call—in yet another act of misconduct and blatant self-dealing—Defendants entered into a deal in which they would receive **$2.4 million** for selling a controlling interest in Eastern National Bank. *See* **Exhibit C** (p.14). To buy time for the deal to close, Defendants and their counsel purposefully misled this Court by filing an eve-of-trial motion to dismiss based on judicial estoppel and disguising it as an attack on the Court's subject matter jurisdiction. In response to the Court's concerns regarding the timing of this motion, Defendants led the Court to believe that these were newly discovered issues that could not have been uncovered in due time. *See* **Exhibit A**; Hearing Transcript of October 16, 2023 (15:15—18:2). The record, however, shows otherwise.

a) <u>The Motion to Dismiss Admittedly Lacks Sufficient Legal and Factual Support</u>

On October 16, 2023, Defendants admitted to the Court that their motion was based on nothing but speculation:

> **MR. STROMAN:**…So, we have, through Lexis, attempted to get a number of these documents but as plaintiffs' counsel said, you can't just go and click on the documents. *And I honestly have no idea what these documents might entail*…

LEÓN COSGROVE JIMENEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR │ MIAMI, FL 33134 │ T 305.740.1975 │WWW.LEONCOSGROVE.COM

> **THE COURT**: So, if you don't have all of the information, yet you still filed a motion challenging standing; how should I consider that?
>
> **MR. STROMAN**: Well, I think that we got as much information as was available…

*Id*. at (19:12—20:11) (emphasis added). Defendants filed their motion to dismiss for lack of Article III standing just *one* day after they had expressly represented to the Court that they did not have grounds to raise an Article III standing argument:

> **THE COURT**:…So, is that what you are asserting, that they no longer have standing?
>
> **MR. STROMAN**: Well, its tricky, right, because if I walk you through it, it's clear that they should be collaterally estopped from claiming that they own shares. The law is very clear on that, *but I am just not comfortable telling the Court that they don't have Article III standing because of this collateral estoppel issue*, so this is something that's going to be, I think, demonstrated at trial through the testimony of their client. And it's something that can be raised on directed verdict.

*See* **Exhibit B;** Hearing Transcript of October 13, 2023, at (37:3-13) (emphasis added).

The Court, in fact, specifically asked Defendants: "Is that what we are talking about, estoppel, or are we talking about standing?" (Ex. A; 11-13). And Defendants led the Court to believe that standing and judicial estoppel were inextricably intertwined pursuant to the Eleventh Circuit's decision in *Slater*. *Id*. ("Again, this is why, you know, I explained it on Friday the way I did because to reach the collateral estoppel, that is very clear under Eleventh Circuit law. That's the Slater versus U.S. Steel case…"). Defendants further represented to the Court that *Slater* was "on all fours with this case," *see* (DE 417 at 16), that "the Eleventh Circuit recognizes that what Mr. Santaella has done is a clear, collateral [sic] estoppel problem," (Ex. A; 51:4-10) and that "under this set of factors set forth by the Eleventh Circuit, Mr. Santaella fails at every step of the analysis," (*Id*. at 52:2-9).

Defendants now admit that *Slater* is wholly inapplicable. *See* (DE 435 at 8) ("Plaintiffs are correct that Florida law governs this Court's application of judicial estoppel."). But even if *Slater*

LEÓN COSGROVE JIMENEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

did apply, *Slater* does not even remotely deal with standing. *See* (DE 433 at pp.10-12; Plaintiffs Response to Defendants' Motion to Dismiss). Moreover, after obtaining unfettered access to the bankruptcy court file, it is evident that Valcorp—the entity holding the relevant ENB shares—was exempt from the bankruptcy estate because it was held as tenancy by the entireties. *See* Plaintiffs' Sur-Reply (DE 438 at 3-5). In support of their argument that Valcorp was not exempt, however, Defendants relied on the Eleventh Circuit's decision in *In re Doan,* 672 F.2d 831 (11th Cir. 1982). But *Doan* was *expressly* abrogated by the Supreme Court a decade ago. *See Law v. Siegel*, 571 U.S. 415, 425 (2014).

Defendants also relied on *Maharaj, on Behalf of Interquant Capital Advisors, Ltd. v. Bankamerica Corp.*, 94 CIV. 7210 (DLC), 1995 WL 688907, at *1 (S.D.N.Y. Nov. 20, 1995) for the proposition that "a derivative plaintiff [is] judicially estopped from claiming standing due to his denial of share ownership in a prior action." *See* (DE 435 at 6). But Defendants failed to advise the Court that in 1997, the Second Circuit reversed the district court's decision in *Maharaj*, finding that plaintiff's purported prior inconsistent statements did not prevent him from maintaining the derivative action. *See Maharaj v. Bankamerica Corp*., 128 F.3d 94, 99 (2d Cir. 1997).

b) <u>The Record Demonstrates that Defendants Had Knowledge Regarding the Issues Raised in Their Motion Over a Year Before the Motion Was Filed</u>

In the very first filing made by DRT in this matter, Defendants went to great lengths to smear Mr. Santaella by specifically raising the issues surrounding his personal bankruptcy. *See* (DE 132 at 2-3) (referring to Mr. Santaella's personal bankruptcy proceeding no less than *four* times). In fact, Defendants raised Mr. Santaella's personal bankruptcy proceeding in almost every substantive filing they made. Then, on December 21, 2022, during Plaintiffs' corporate representative deposition, Defendants' counsel, Mr. Stroman, specifically asked the following questions regarding Plaintiffs' ownership of ENB shares:

- This is a document titled "Santaella Group Transfers." Have you seen this document before?
- So according to this report, what date did Bancor Group incorporated acquire shares of Eastern National Bank?
- And from what entity did Bancor Group acquire those shares?
- Why was there a transfer from Franeker to Bancor Group?
- Now, Stitching acquired certain shares from Valcorp Securities on May 24th, 2005. Do you see that?
- How much did you, corporate representative of Stitching, pay Valcorp for those 126 shares on May 24th, 2005?
- Do you know whether your father disclosed Corpofin on his bankruptcy schedules in the matter 00-BR-16366?

(DE 305-19 at 76:21—77:12; 180:17—183:23).

Later, on January 11, 2023, during an evidentiary hearing on Plaintiffs' motion to disqualify DRT, Mr. Santaella thoroughly testified about his personal bankruptcy proceeding. *See generally* (DE 212-1 at 65-93). Defendants also took two separate depositions of Mr. Santaella—one in January of 2023 and one in March of 2023—where these questions were asked again:

- So, therefore, you have an ultimate beneficial ownership, in your view, in Mercorp?
- And that – that ownership interest would have existed between 1999 and the present; is that correct?
- When you filed for bankruptcy, did you disclose on your – on the forms that you filled out that you had ownership interests, ultimate beneficiary status, or otherwise of Corpofin and Mercorp?
- Were there other assets that you did not disclose on your corp—on the disclosure forms for the Chapter 7 trustee when you filed for bankruptcy?

**Exhibit F**; Excerpts of Juan Santaella's Deposition Testimony at (107:10—108:19; 286:11-19) And on March 8, 2023, Defendants also asked these questions during the second deposition of Plaintiffs' corporate representative. *See* (DE 281-2 at 338:14-25) ("Do you understand that if your family were ever to regain control of its shares of Corpofin, that those owned by your family, those shares, would be collectable by the trustee?").

Then, on May 27, 2023, the Parties filed their joint pretrial stipulation, which included witness and exhibit lists. *See* (DE 345). Seven of the first ten exhibits listed by Defendants, are documents from Mr. Santaella's personal bankruptcy proceeding. *See* (DE 345-1 at 62-63). Defendants' witness list also included Soneet Kapila, the Trustee on Mr. Santaella's personal bankruptcy proceeding. *See* (DE 345-2 at 6). Even prior to filing the pretrial stipulation, DRT represented that Mr. Kapila would testify that Mr. Santaella did not own Corpofin.[4]

Over the next few months, however, Defendants admittedly decided to not look any further into this matter:

> Then we came before Your Honor and, you know, we had the initial trial that was scheduled in either – I think it was June of 2023, so there was a hefty amount of trial prep work, things like the joint pretrial stipulations, those sort of things, identifying the witnesses, all of that was done in a very hasty manner in late May in anticipation of a May trial. *Then, essentially, nothing happened in June, July, then August, September*, and up until now everyone now has been preparing for trial.

*See* Ex. A at (17:16-24) (emphasis added).

Simply put, the record undisputedly shows that Defendants were aware of the issues surrounding Mr. Santaella's bankruptcy case since October of 2022—one year before the scheduled trial—and that they planned to raise issues regarding Plaintiffs' ownership of shares since at least May of 2023.

## LEGAL STANDARD

Under 28 U.S.C. § 1927, "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs,

---

[4] Mr. Kapila has no information relevant to this case. The only plausible purpose for listing him as a witness would be to testify about Mr. Santaella's personal bankruptcy proceedings.

expenses, and attorneys' fees reasonably incurred because of such conduct." There are three requirements for an award of sanctions under Section 1927: "(1) an attorney must engage in unreasonable and vexatious conduct; (2) such unreasonable and vexatious conduct must multipl[y] the proceedings; and (3) the amount of the sanction cannot exceed the costs occasioned by the objectionable conduct." *Norelus v. Denny's, Inc*., 628 F.3d 1270, 1281 (11th Cir. 2010). A court "may impose sanctions for egregious conduct by an attorney even if the attorney acted without the specific purpose or intent to multiply the proceedings." *Amlong & Amlong, P.A. v. Denny's, Inc*., 500 F.3d 1230, 1241 (11th Cir. 2007).

Courts also have broad inherent authority to consider and impose sanctions for litigation misconduct. *See Chambers v. NASCO, Inc*., 501 U.S. 32, 46 (1991) ("the inherent power extends to a full range of litigation abuses"); *Sassower v. Field*, 973 F.2d 75, 80-81 (2d Cir. 1992) ("The Supreme Court has made clear that a district court has inherent authority to sanction parties appearing before it for acting in bad faith, vexatiously, wantonly, or for oppressive reasons."). "That authority includes the power to sanction litigants, even by dismissing a case, for abusive litigation practices." *Bassett v. Wal-Mart Stores E., LP*, 18-61984-CIV, 2019 WL 4691824, at *1 (S.D. Fla. July 10, 2019), citing *Vargas v. Peltz*, 901 F. Supp. 1572, 1579 (S.D. Fla. 1995). Moreover, "[i]n determining whether an attorney acted in bad faith, a court may rely on the totality of the circumstances. Even if discrete instances of an attorney's conduct would not have been sanctionable, a court may nevertheless find bad faith based on the attorney's conduct considered as a whole." *In re Engle Cases*, 283 F. Supp. 3d 1174, 1225 (M.D. Fla. 2017) (internal citations omitted).

## **ARGUMENT**

For the last year and half, Defendants caused this Court and Plaintiffs to consider and reconsider numerous motions that utterly lacked factual and legal support. Defendants filed these motions for no purpose other than to abuse and disrupt the litigation process and to gain a tactical advantage as part of a bad faith litigation strategy, the last iteration of which, is their meritless eve-of-trial motion to dismiss. In doing so, Defendants have continuously and purposefully misrepresented applicable law and the facts of this case to the Court. Defendants' conduct warrants severe sanctions.

A party commits fraud on the court when they "sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." *Vargas*, 901 F. Supp. at 1579; *see also Martin v. Automobili Lamborghini Exclusive, Inc*., 307 F.3d 1332, 1335 (11th Cir. 2002). Equally, a party or counsel's reckless misrepresentation of applicable law warrants sanctions under the Court's inherent authority and Section 1927. For example, in *DeSisto College, Inc. v. Line*, the Eleventh Circuit found that:

> [Counsel's] insistence on maintaining a legal stance untenable with our law demonstrates either an ignorance of our law, and thus inadequate research, or some intent to mislead the trial court as to the present state of this Circuit's precedent, and thus bad faith.

888 F.2d 755, 761 (11th Cir.1989). Similarly, in *Fox v. Acadia State Bank*, 937 F.2d 1566, 1570 (11th Cir. 1991), the Eleventh Circuit affirmed sanctions against a party that "misled the district court" by representing "that only other district courts had addressed the question of a private right of action under § 17(a) after [the Eleventh Circuit] had provided a clear answer to that question."

LEÓN COSGROVE JIMENEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR │ MIAMI, FL 33134 │ T 305.740.1975 │ WWW.LEONCOSGROVE.COM

Other courts also routinely sanction parties and their counsel for filing documents with an improper purpose. *See Jackling v. Brighthouse Life Ins. Co*., 20-CV-6899-MJP, 2022 WL 831497, at *2 (W.D.N.Y. Mar. 21, 2022) (awarding sanctions against counsel under Section 1927 for filing documents with an "improper purpose."); *Rock v. Enfants Riches Deprimes, LLC*, No. 17-CV-2618 (ALC), 2020 WL 468904, at *4 (S.D.N.Y. Jan. 29, 2020) (awarding sanctions pursuant to § 1927 and its inherent authority against the plaintiff for "misleading the Court, and [] making meritless arguments.").

Here, the record unequivocally shows that Defendants and DRT acted in bad faith and committed fraud on the court. First, Defendants filed an eve-of-trial motion to dismiss that admittedly lacked factual and legal support. Second, knowing that they had failed to plead judicial estoppel as an affirmative defense, Defendants purposefully misled the Court by disguising the motion as a challenge to Plaintiffs' standing. Third, the motion admittedly sets forth the wrong legal standard and is based on cases that have been abrogated or reversed. *See* (DE 435 at 8) (stating that "Plaintiffs are correct that Florida law governs this Court's application of judicial estoppel" and relying on *Doan* (expressly abrogated by the Supreme Court) and *Maharaj* (reversed by the Second Circuit Court of Appeals)). Fourth, Defendants represented to the Court that the matters raised in their motion were newly discovered issues when the record unequivocally establishes that Defendants had knowledge of these matters over a year in advance. And fifth, it is readily apparent that the purpose of the motion was to delay trial so that Defendants could secure a $2.4 million cash award pursuant to an equity incentive plan that is at the center of this dispute.

To say that Defendants' misrepresentations to the Court in filing their eve of trial motion to dismiss hampered Plaintiffs' ability to present their claims, is to say far too little. Only the severest of sanctions will rectify the prejudice to the Plaintiffs and uphold the integrity of the

LEÓN COSGROVE JIMENEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

litigation process. *See Martin*, 307 F.3d at 1335 (affirming dismissal as a sanction where the litigant 1) misled the court about the real party in interest in the case, 2) engaged in extensive discovery abuse to obstruct revelation of the known falsities in the complaint, and 3) used letters threatening class-action litigation to extort settlement offers from defendants).

What is more, Defendants' eve of trial motion must be examined against the backdrop of Defendants' bad faith conduct throughout the entirety of this case. *In re Engle Cases*, 283 F. Supp. 3d at 1225. And the record shows that Defendants have filed demonstrably frivolous and misleading motions. To be sure, the Court has already found that Defendants filed papers that (1) constituted "absurdity approaching frivolity," (2) sought "to stall the taking of discovery in this action," (3) sought to take "a cumulative bite of the apple," and (4) violated the federal rules of civil procedure by seeking dismissal without motion. The Court has also admonished Defendants for raising new issues in their objections to an R&R, *see* (DE 240 n.2), and for attempting to "amend their affirmative defenses via a response to a summary judgment motion," (DE 403 at 3-4).

The Eleventh Circuit has found such conduct to be sanctionable under Section 1927 and the Court's inherent authority. For example, in *Barnes v. Dalton*, the Eleventh Circuit affirmed an award of sanctions against the plaintiff and counsel based on the following bad faith conduct:

> (1) repeatedly filing a complaint containing claims which plaintiffs' counsel knew or should have known were time-barred; (2) the repeated failure to perfect service upon the defendant coupled with the filing and pursuit of a motion for default in spite of the knowledge that service had not been perfected; (3) repeatedly filing a complaint which did not comply with local rule 23.1; and (4) repeatedly filing a complaint containing claims of pattern and practice and disparate impact racial discrimination without any evidence to support such theories of recovery.

158 F.3d 1212, 1214 (11th Cir. 1998).

LEÓN COSGROVE JIMENEZ, LLP
255 ALHAMBRA CIR., 8ᵀᴴ FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

And sister courts in this district have also found similar conduct to be vexatious and unreasonable under 28 U.S.C. § 1927 and the Courts' inherent authority. In *Bernstein v. Boies, Schiller & Flexner, L.L.P.*, 416 F. Supp. 2d 1329, 1331 (S.D. Fla. 2006), the Court found that counsel's failure to (1) comply with Court orders, (2) withdraw frivolous papers, and (3) correct misrepresentations to the Court multiplied proceedings and warranted sanctions:

> Because of Mr. Kleppin's misrepresentations the instant motion has been filed and the Court has had to expend time and resources in parsing through the fabrications that now make up the record in this case. Furthermore, Defendants have had to expend time and funds on responding to each of Mr. Kleppin's unwarranted and misleading motions.

Finally, in addition to violating Florida Bar Rule 4-1.9, *see* (DE 251), DRT has also violated Florida Rule 4-3.4 which states that "[a] lawyer must not… present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter." R. Regulating Fla. Bar 4-3.4 (2014); *see also Florida Bar v. Rush*, 361 So. 3d 796, 804 (Fla. 2023). Here, DRT has threatened criminal actions against Plaintiffs' principals and other third party witnesses by (1) calling minority shareholders (or their counsel) and stating that federal marshalls would take actions against them; (2) beginning each deposition with questions suggesting pending criminal actions against the deponents; (3) bringing a retired FBI agent to depositions for not other purpose than to intimidate the deponents; and (4) telling Plaintiffs' counsel that they would "keep the DOJ in the loop." This type of conduct is textbook bad faith subject to sanctions. *See Gladney v. Seagraves*, 308CV1052J25JBT, 2011 WL 13295123, at *4 (M.D. Fla. Feb. 10, 2011) (awarding attorneys' fees against attorney who threatened to use a pending criminal charge against other party). There can be no question then that Defendants (1) have acted in bad faith; (2) have unreasonably prolonged and multiplied these proceedings; and (3) need to be sanctioned.

LEÓN COSGROVE JIMENEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court enter an Order (1) striking Defendants' pleadings; (2) ordering Defendants and DRT to reimburse Plaintiffs for the expenses and fees they incurred in responding to the frivolous filings referenced in this motion, including Defendants' eve of trial motion to dismiss, found in the following docket entries (DE 140; DE 145; DE 211; DE 221; DE 267; DE 279; DE 281; DE 391; DE 417); (3) ordering Defendants and DRT to reimburse Plaintiffs for the expenses and fees they incurred in preparing for trial between October 4, 2023—when Defendants announced ready for trial—and October 16, 2023—when trial was postponed; (4) ordering Defendants and DRT to reimburse Plaintiffs for the expenses and fees they incurred in briefing this motion for sanctions; and (5) ordering Defendants to deposit the $2.4 million cash award or any other consideration received from the investor group in the Court's registry until the end of this litigation.

Date: December 20, 2023          Respectfully submitted,

**Diego Pérez Ara**
Derek E. León
  Florida Bar No. 625507
Diego Pérez Ara
  Florida Bar No. 1023765
**LEÓN COSGROVE, LLP**
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Telephone: 305.740.1975
Facsimile: 305.351.4059
Email: dleon@leoncosgrove.com
Email: dperez@leoncosgrove.com
Email: eperez@leoncosgrove.com
Email: vcerra@leoncosgrove.com

Gregory S. Carter, Esq. (*Pro Hac Vice*)
**LEÓN COSGROVE, LLP**
999 18th Street, Suite 1925N

Denver, Colorado 80202
Telephone: (720) 689-7018
Email: gcarter@leoncosgrove.com
Email: rmartinez@leoncosgrove.com

*Counsel for Plaintiffs*

## LOCAL RULE 7.1(A)(3) CERTIFICATION

Pursuant to Local Rule 7.1(A)(3), undersigned counsel for Plaintiff Bancor Group Inc. and

Stitching Particulier Fonds Franeker certifies that he attempted to confer with Defendants' counsel

but was unable to obtain a response.

Date: December 20, 2023               Respectfully Submitted,

**Diego Pérez Ara**
Derek E. León
Florida Bar No. 625507
Diego Pérez Ara
Florida Bar No. 1023765
**LEÓN COSGROVE, LLP**
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Telephone: 305.740.1975
Facsimile: 305.351.4059
Email: dleon@leoncosgrove.com
Email: dperez@leoncosgrove.com
Email: eperez@leoncosgrove.com
Email: vcerra@leoncosgrove.com

Gregory S. Carter, Esq. (*Pro Hac Vice*)
**LEÓN COSGROVE, LLP**
999 18th Street, Suite 1925N
Denver, Colorado 80202
Telephone: (720) 689-7018
Email: gcarter@leoncosgrove.com
Email: rmartinez@leoncosgrove.com

*Counsel for Plaintiffs*