**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 22-20201-CV-GAYLES/TORRES

BANCOR GROUP INC., and
STITCHING PARTICULIER FONDS
FRANEKER, derivatively on behalf of
EASTERN NATIONAL BANK, N.A.,

    *Plaintiffs*,

v.

GABINA RODRIGUEZ,
LOUIS FERREIRA,
CESAR GOMEZ VALERO,
KEITH PARKER,
CARLOS RODRIGUEZ, and
GUSTAVO MACIAS,

    *Defendants*.

_____/

**REPORT AND RECOMMENDATION ON DEFENDANTS'
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

    This matter is before the Court on Defendants' motion to dismiss Plaintiffs' complaint for lack of subject matter jurisdiction. [D.E. 417]. The motion is fully briefed. [D.E. 433, 435, 438]. Accordingly, Defendants' motion is ripe for disposition. After careful consideration of the briefing, the relevant authority, and for the reasons discussed below, Defendants' motion to dismiss should be **DENIED**.[1]

---

[1] On January 21, 2022, the Honorable Darrin P. Gayles referred the case to the undersigned Magistrate Judge for disposition. [D.E. 9].

1

## I.  BACKGROUND

On the eve of trial, Defendants filed their *third* motion to dismiss the case against them.  Conscious that the deadline for dispositive motions passed a long time ago, Defendants couched their recent arguments as a challenge to the Court's subject matter jurisdiction – a challenge that may be raised at any time.  FED. R. CIV. P. 12(h).  But this is not really a Rule 12(b)(1) motion; it is an attempt to engineer a dismissal by leveraging the Court's equitable power.  The problem Defendants have, however, is that Defendants waived long ago any right they may have had to seek such relief and get out from under this complaint.  And even if we were to overlook Defendants' waiver, we also find that Defendants' arguments still fail as a matter of law.

This is a shareholder derivative lawsuit brought against former and current members of Eastern National Bank's board of directors.  It could go without saying, but shareholder derivative suits may be brought only by the shareholders of the corporate entity in question.  *See, e.g., Gollust v. Mendell*, 501 U.S. 115, 125-26 (1991) (discussing Article III standing); FED. R. CIV. P. 23.1(b) (discussing standing under the Federal Rules).

Plaintiffs alleged in their verified complaint that they own shares in the Bank.  [D.E. 1 at ¶¶ 1, 2].  In Defendants' answer, they unequivocally admitted that Plaintiffs own shares in the Bank.  [D.E. 105 at ¶¶ 1, 2].  And since that admission, Plaintiffs status as shareholders has not been at issue.  Indeed, Defendants do not dispute that Plaintiffs, as shareholders, have previously been allowed to vote at

2

shareholder meetings and to receive dividend payments. In other words, the fact of Plaintiffs' shareholder status has been established in this case (and in reality) for years.

Nevertheless, Defendants represented on the eve of trial that the admission in their answer was based on assumption, a faulty one at that because on second thought they "no longer believe" that Plaintiffs are actually shareholders of the Bank. [D.E. 417 at 2]. To be clear, it is not that Defendants "no longer believe" that Plaintiffs physically possess shares in the Bank; it is undisputed that they do. Rather, Defendants submit, the historical context surrounding Plaintiffs' ownership of these shares counsels in favor of the Court employing the equitable doctrine of judicial estoppel to deem Plaintiffs' ownership interest in the relevant shares terminated.

The historical context surrounding the ownership of Plaintiffs' shares in the Bank may seem somewhat complicated, but the material facts are straightforward. Juan Santaella, one of the principals behind Plaintiffs, personally filed for bankruptcy more than 20 years ago. *See, e.g., In re Santaella*, 298 B.R. 793, 795 (Bankr. S.D. Fla. 2002) (discussing the background of the case).[2] During that proceeding, Mr. Santaella disclosed an interest in Valcorp Securities as one of his assets. Mr. Santaella claimed that his Valcorp asset was exempted from the bankruptcy estate, however, because he and his wife owned Valcorp as tenants by the

---

[2] The Court is aware that this bankruptcy case does not paint a flattering portrait of Mr. Santaella. Defendants have repeatedly referenced the bankruptcy case in their filings since October 2022. [D.E. 132 at 2-3].

3

entirety. *See* 11 U.S.C. § 522(b)(3)(B) (defining the tenancy by the entirety exemption).

The relevance of Valcorp is that it previously owned the shares in the Bank that Plaintiffs now rely upon for standing. The journey of the relevant shares is as follows. In 1999, Valcorp acquired 63 shares in the Bank. In 2000, Mr. Santaella filed a voluntary Chapter 7 bankruptcy petition. In 2001, Valcorp acquired 63 additional shares in the Bank. In 2005, Valcorp transferred its 126 shares in the Bank to Plaintiff Franeker.[3] In 2018, the bankruptcy court approved the settlement agreement between Mr. Santaella and the Trustee. In 2019, the Trustee filed his final report certifying that Mr. Santaella's bankruptcy estate had been fully administered, including Valcorp – an asset that the Trustee identified as property owned by Mr. Santaella as a tenant by the entirety and therefore an asset that provided no value to the bankruptcy estate. That same year, the bankruptcy court closed the case and Plaintiff Franeker transferred 63 shares in the Bank to Plaintiff Bancor. Plaintiffs filed this lawsuit a few years later.

Defendants' newly-found argument rests on the premise that Mr. Santaella, during these bankruptcy proceedings, improperly failed to disclose his ownership of the shares he held in the Bank by virtue of his ownership interest in Valcorp (even though he disclosed his interest in Valcorp and the bankruptcy court ultimately ruled that Valcorp was exempted from the bankruptcy estate). Had Mr. Santaella disclosed

---

[3] The Bank issued new stock certificates to Franeker because the original certificates held by Valcorp had been lost.

4

these shares, Defendants argue, the Trustee would have theoretically treated the shares as assets of the bankruptcy estate and hence would have presumably forced the sale of those shares so that their value could be redistributed to Mr. Santaella's creditors in accordance with the bankruptcy code.  Consequently Plaintiffs never would have owned their shares in the Bank because those shares would have been clawed from Mr. Santaella's possession by the Trustee before Mr. Santaella could have transferred the shares to Plaintiffs.  And Defendants conclude that Mr. Santaella's failure to expressly disclose these shares in the Bank during his bankruptcy proceeding justifies a profound exercise of this Court's equitable power – i.e., a finding that Plaintiffs are judicially estopped from relying on their ownership of these shares to prove their standing in this shareholder derivative action.

Defendants do not dispute, however, that no claim or defense of estoppel such as this was ever raised before during this saga, and specifically was not identified as an affirmative defense in Defendants' answers to the complaints filed against them.  To the contrary, they at all times admitted as a matter of fact that Plaintiffs were shareholders.  The pending motion seeks to, in effect, claw back these admissions and their failure to plead defenses to the contrary that they rely upon now.

## II.     ANALYSIS

Federal courts are courts of "limited jurisdiction."  *Trump v. United States*, 54 F.4th 689, 694 (11th Cir. 2022) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  Accordingly, federal courts "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial

5

decree." *Id.* A component of this jurisdictional framework involves the doctrine of standing, which "gives meaning to Article III's cases-and-controversies" requirement by identifying the disputes that are "appropriately resolved through the judicial process." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). To establish Article III standing, a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision. *Id.* at 157-58. The federal rules impose a similar standing requirement for shareholder derivative actions. *See* FED. R. CIV. P. 23.1(b).

Defendants submit that Plaintiffs do not have standing because they should be judicially estopped from claiming an ownership interest in the Bank. If Plaintiffs are not shareholders, Defendants argue, then they are not in a proper position to assert that the Bank – the entity Plaintiffs purport to represent in this lawsuit – has been injured by Defendants' conduct.

But this argument fails for two reasons. First, Defendants waived it by admitting that Plaintiffs are in fact shareholders. Second, even if the argument had not been waived, the law governing judicial estoppel does not provide for the exercise of that judicial power under these circumstances. The newly-found theory is meritless.

### A. *Defendants waived their standing argument.*

To reiterate, Defendants admitted in their answer that Plaintiffs *are* shareholders. Absent an amendment to the pleading, these judicial admissions

conclusively establish the fact of Plaintiffs' bona fide shareholder status. *See, e.g., Reliable Contracting Group, LLC v. Dept. of Veterans Affairs*, 779 F.3d 1329, 1334 (Fed. Cir. 2015) ("[I]t is clear from other circuits that judicial admissions, which 'have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact,' are limited to formal admissions made in, for example, a complaint, answer, or pretrial order."); *see also Almand v. DeKalb Cnty.,* 103 F.3d 1510, 1514 (11th Cir. 1997) ("The answer admits the facts alleged in paragraph 3, but we wonder whether the admission has effect for conclusions of law that are set out in the complaint."); *Ferguson v. Neighborhood Housing Svcs. of Cleveland, Inc.*, 780 F.2d 549, 551 (6th Cir. 1986) ("As NHS has admitted facts establishing federal subject matter jurisdiction over the case, its appeal is without merit."); *Wild v. Gaskins*, No. 13-cv-0070, 2013 WL 6048915, at *1 (E.D. Va. Nov. 14, 2013) ("When the defendant admits facts establishing diversity jurisdiction, as Defendant does in this case (Answer ¶ 1), the threshold question becomes whether maritime jurisdiction exists over the claim."); *Bissell v. Township of Spring Valley*, 124 U.S. 225, 232 (1888) ("If the party against whom a ruling is made on a demurrer wishes to avoid the effect of the demurrer as an admission of the facts in the pleading demurred to, he should seek to amend his pleading or answer, as the case may be."); FED. R. CIV. P. 8 (discussing admissions in pleadings).

Defendants submit that, through the filing of their third motion to dismiss, they "withdraw" the portions of their answer that admit Plaintiffs' shareholder status. [D.E. 417 at 4]. The act of filing a motion to dismiss is not procedurally

sufficient to amend a pleading, especially when the motion is filed more than a year after the deadline to amend the pleadings. *See* [D.E. 121]; FED. R. CIV. P. 15(a)(2). At a minimum, belated motions to amend a pleading must make a showing of "good cause" before the Court can modify the scheduling order and thereby permit the amendment of a pleading. FED. R. CIV. P. 16(b)(4). But Defendants have not filed a motion for leave to amend their answer. And even when we generously construe part of their motion to dismiss as a motion for leave to amend their answer, we find that Defendants have not offered any sort of explanation that could constitute good cause for why defense counsel "realized" only "ten days before trial" that it "made no sense" for Plaintiffs to be shareholders. [D.E. 435 at 8].

Similarly, Defendants also failed to include any affirmative defense of estoppel to support its attempted use of judicial estoppel in this case. That too is fatal to the legal theory underpinning the pending motion. It would be reversible error for us to simply ignore that failure to plead on the eve of trial, especially when good cause has not been shown. *See, e.g., Diaz v. Jaguar Rest. Grp., LLC*, 627 F.3d 1212, 1214–15 (11th Cir. 2010) (reversing judgment for defendant because "[defendant] repeatedly waived the [affirmative] defense by failing to plead the defense in its Answer and by failing to move to amend its Answer before trial.") (citing *Latimer v. Roaring Toyz, Inc.,* 601 F.3d 1224, 1239 (11th Cir. 2010) ("Failure to plead an affirmative defense generally results in a waiver of that defense.").

8

Recall that, shortly after the Court held a hearing on Plaintiffs' motion for a preliminary injunction, Defendants discharged their lawyers from Holland & Knight and then hired the firm of Diaz, Reus & Targ to represent them in the case. [D.E. 127, 128, 129, 130]. And when Evan Stroman, one of Defendants' lawyers from Diaz, Reus & Targ, filed the firm's *first* substantive document on behalf of Defendants, he chose to highlight the history of Mr. Santaella's bankruptcy proceedings in the first two pages even though Mr. Santaella is not a party in this case. [D.E. 132 at 2-3]. That document was filed in October 2022 – one year before Defendants lodged this third motion to dismiss. Nevertheless, Mr. Stroman claims that he connected the dots between Mr. Santaella's bankruptcy and this shareholder derivative lawsuit only on the eve of trial.

Mr. Stroman has been aware of Mr. Santaella's bankruptcy since he entered an appearance in the case. Indeed, without solicitation, he recited the history of Mr. Santaella's bankruptcy for the Court as though it was the opening tune of a Broadway musical. If we (correctly) assume that Mr. Stroman has been diligently defending this case since he was hired, then we struggle to understand how it took him a whole year to "realize" the potential connection between the bankruptcy and Plaintiffs' shares in the Bank. Alternatively, if we were to believe that this connection was not made until the eve of trial, then we have serious concerns regarding counsel's diligence in this case and whether or not the late-filed motion was a bad faith effort at derailing an imminent trial date. But neither explanation constitutes good cause

9

to modify the scheduling order and thereby permit Defendants to withdraw their admissions that Plaintiffs are, in fact, shareholders.

Given Defendants' admissions regarding Plaintiffs' shareholder status, as well as the record evidence concerning Plaintiffs' ownership of the shares at issue, Plaintiffs have certainly met their burden of proving by a preponderance of the evidence that they are, in fact, among the Bank's shareholders. *Eldridge v. Pet Supermarket Inc.*, 446 F. Supp. 3d 1063, 1067 (S.D. Fla. 2020) ("'In the face of a factual challenge to subject matter jurisdiction, the burden is on the plaintiff to prove that jurisdiction exists' by a preponderance of the evidence.") (quoting *OSI Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002)). By admitting that Plaintiffs are shareholders, Defendants waived their ability to undermine Plaintiffs' standing through the doctrine of judicial estoppel. Accordingly, Plaintiffs have standing to pursue their shareholder derivative claims against Defendants.

### B. *Plaintiffs are not estopped from owning their shares in the Bank.*

Even if we were persuaded that Defendants had not waived the opportunity to engineer a lack of standing, the doctrine of judicial estoppel nevertheless would not bar Plaintiffs from maintaining this lawsuit. The parties agree that Florida law governs here and, under Florida law, all four of the following elements must be satisfied for the doctrine of judicial estoppel to operate.

> [1] A claim or position successfully maintained in a former action or judicial proceeding [2] bars a party from making a completely inconsistent claim or taking a clearly conflicting position in a subsequent action or judicial proceeding, [3] to the prejudice of the adverse party, [4] where the parties are the same in both actions, subject

> to the "special fairness and policy considerations" exception to the mutuality of parties requirement.

*Boneta v. Am. Med. Sys., Inc.*, 524 F. Supp. 3d 1304, 1318 (S.D. Fla. 2021) (quoting *Salazar-Abreu v. Walt Disney Parks and Resorts U.S., Inc.*, 277 So. 3d 629, 631 (Fla. 5th DCA 2018)).

We doubt that the first two elements can be satisfied on this record. It would be one thing if Mr. Santaella had previously taken the position that he did not own shares in the Bank and now sought to claim that he does. But the reality is more nuanced than that. Mr. Santaella previously disclosed an interest in Valcorp, which in turn held shares in the Bank, and Mr. Santaella successfully persuaded the bankruptcy court that his interest in Valcorp was exempt from the bankruptcy estate. The shares held by Valcorp were subsequently transferred to Plaintiff Franeker, and then a fraction of those shares was transferred from Plaintiff Franeker to Plaintiff Bancor. Therefore, Plaintiffs now claim ownership of the shares. We are not persuaded that these positions are either inconsistent or clearly conflicting with one another. The bankruptcy code permits debtors to exempt certain assets from the bankruptcy estate, and the fact that a debtor managed to exempt an asset that held other assets that ultimately found their way into Plaintiffs' possession seems to be a feature of the bankruptcy code rather than a bug. In other words, one could argue that this is how it is supposed to work and therefore no inconsistent position between the bankruptcy case and this lawsuit arises.

In any event, there can be little doubt that the fourth element cannot be satisfied unless some exception to the "mutuality of parties" requirement can be

11

...

identified. This is so because neither Plaintiffs *nor* Defendants were parties to Mr. Santaella's bankruptcy proceeding. That requirement exists precisely to avoid strangers to litigation from benefitting from statements or actions taken in pursuit of that litigation.

Defendants nevertheless argue that the "special fairness and policy considerations" exception to mutuality should apply here. They believe that, in addition to disclosing his interest in Valcorp, Mr. Santaella should have expressly disclosed the assets held by Valcorp – i.e., the shares in the Bank. His failure to do so, in their view, constitutes an "intentional self-contradiction to obtain an unfair advantage in litigation." *See Boneta*, 524 F. Supp. 3d at 1319.

That claim rings hollow. We cannot find that Mr. Santaella intentionally concealed his indirect ownership of the Bank because doing so would garner him an unfair advantage in a shareholder derivative suit that was instigated *two decades after the alleged concealment*. First, there is substantial evidence in the record indicating that Mr. Santaella did not conceal his indirect interest in the Bank because he expressly disclosed his direct interest in Valcorp – the entity that held shares in the Bank. Second, Defendants are being sued for conduct that allegedly occurred many years after Mr. Santaella purportedly hid his interest in the Bank during the bankruptcy proceeding. So, under Florida law, Defendants' judicial estoppel argument fails. Accordingly, even if the Court were inclined to overlook the fact that Defendants have repeatedly and fatally waived this argument, we would nevertheless find no merit in their attempt to undermine Plaintiffs' standing to bring this case.

### *III.  CONCLUSION*

For the foregoing reasons, the Court **RECOMMENDS** that Defendants' motion to dismiss be **DENIED**.  The case should be reset for trial.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the Court finds good cause to expedite any objections to this Report and Recommendation.  The parties have seven (7) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge.  Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.  28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 3rd day of January, 2024.

EDWIN G. TORRES
Chief United States Magistrate Judge

13