**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

CASE NO.: 1:22-CV-20201-DPG

BANCOR GROUP, INC. and STITCHING
PARTICULIER FONDS FRANEKER,
derivatively on behalf of
EASTERN NATIONAL BANK, N.A.,

    Plaintiffs,

v.

GABINA RODRIGUEZ, LOUIS FERREIRA,
KEITH PARKER, CARLOS RODRIGUEZ,
and GUSTAVO MACIAS

    Defendants.
_____/

**DEFENDANTS' OMNIBUS BRIEF OPPOSING PLAINTIFFS' REQUEST FOR POST-TRIAL INJUNCTIVE RELIEF, PLAINTIFFS' MOTION FOR A CONTINUANCE OF THE JULY 29, 2024 EVIDENTIARY HEARING (ECF NO. 544), AND PLAINTIFFS' MOTION FOR POST-TRIAL DISCOVERY (ECF NO. 543)**

All three of Plaintiffs' post-trial motions should be denied.

*First*, this Court should deny Plaintiffs' request for injunctive relief because Plaintiffs did not prevail on the merits of their claim. Defendants Louis Ferreira, Gustavo Macias, and Keith Parker were found **not** to have violated any fiduciary duties related to the creation of a) Eastern National Bank's equity compensation plan (the "RSU Plan"); or b) the additional 1 million shares of the Bank, which are to be used to recapitalize the Bank and to complete a regulator-mandated change in control. Indeed, those three Defendants prevailed completely on all six breach of fiduciary duty claims asserted against them. While Defendants Carlos Rodriguez and Gabina Rodriguez only prevailed on one of the four claims asserted against them, the jury limited Plaintiffs' recovery to less than 3% of the damages sought by Plaintiffs. And in any event, even if the Court were to entertain the notion that Plaintiffs somehow prevailed on the merits of these

claims, Plaintiffs' request for a permanent injunction is conceptionally unsound and would itself cause irreparable harm to the Bank.

*Second*, the Court should not accept Plaintiffs' motion for a continuance of the evidentiary hearing set for July 29, 2024. Plaintiffs seek **more** testimony from their own expert, Adam Smith, when twice already his testimony has been insufficient for a ruling in Plaintiffs' favor. Plaintiffs claim (ECF No. 544, at 2) that Mr. Smith will, in addition to the testimony he provided at trial, do some additional guesswork and hypothesize about speculative "danger[s]" of "regulatory costs [and] penalties" associated with the RSU Plan, as well as theoretical "misstatements" made to OFAC in connection with all five of the Bank's specific OFAC licenses admitted as evidence during trial. *See* ECF Nos. 528-27; 528-39; 528-40; 528-50; 528-51. Plaintiffs tried this very same approach during the preliminary injunction phase of this proceeding, with Mr. Smith testifying about alleged misrepresentations in the Bank's prior submissions to OFAC. *See* June 29, 2022 Evid. Hr. Tr. on Plaintiffs' Mot. for Prelim. Inj., ECF No. 267-2 at 108:15-114:11; *see also* argument of Plaintiffs' counsel, *id*. at 198:4-205:16. Yet the Court had little difficulty rejecting that exact testimony as insufficient to demonstrate a likelihood of success on the merits. *See* December 21, 2022 Report and Recommendation Denying Plaintiffs' Amended Motion for Preliminary Injunction, ECF No. 174; *see also* Order adopting the R&R, ECF No. 239. The redundant guesswork Plaintiffs want to again introduce through Mr. Smith is not a basis to delay the hearing set for July 29, 2024.

*Third*, the Court should deny Plaintiffs' motion for post-trial discovery, which is based on Plaintiffs' allegation that "Defendants failed to disclose relevant information about" the Bank's recapitalization agreement in advance of trial.  ECF No. 543, at 6. That allegation is demonstrably false. The investor pledge (the one that eventually led to a definitive sales agreement in September

2023) was disclosed on May 8, 2023. *See* Decl. of Louis Ferreira, ECF No. 299-2, at ¶13. And Plaintiffs themselves filed a Notice of Change in Bank Control with the Court in December 2023, which included substantial details regarding the identities of those investors and the terms of the transaction. *See* ECF No. 493-3. If it was necessary to do so, then Plaintiffs had ample opportunity to request *pre*-trial discovery on these issues. Their disappointment with the jury verdict does not warrant *post*-trial discovery.

I. **PLAINTIFFS' MOTION FOR A PERMANENT INJUNCTION SHOULD BE DENIED**

This Court should deny Plaintiffs' motion for a permanent injunction for at least two reasons. ***First***, Plaintiffs did not prevail on the merits of their claims at trial, and ***second***, Plaintiffs cannot demonstrate irreparable harm to the Bank absent an injunction.

A. **PLAINTIFFS DID NOT PREVAIL ON THE MERITS**

The standard for a permanent injunction is the same as the standard for a preliminary injunction, "except that the movant must establish *actual success* on the merits, as opposed to a *likelihood* of success." *KH Outdoor, LLC v. Trussville*, 458 F.3d 1261, 1268 (11th Cir. 2006) (emphasis added). Plaintiffs cannot meet that standard.

Plaintiffs now seek a permanent injunction granting the same relief they sought in their January 14, 2022 Complaint, and in their January 19, 2022 Motion for Preliminary Injunction, that would:

(1) nullify all actions taken at the December 17, 2021, shareholder meeting, including the election of the Board of Directors and the vote to approve the authorization of the additional [1 million] shares of ENB stock;

(2) order Defendants Ferreira, Parker, Carlos Rodriguez, and Macias to notice and hold a shareholders meeting for the purpose of electing a Board of Directors that complies with the ENB's Articles of Incorporation and By-laws and the 2020 Consent Order; and

> (3) enjoin Defendants Ferreira, Parker, Carlos Rodriguez, and Macias from taking any action to implement the Equity Incentive Plan that would allow for the issuance of restricted stock units ("RSUs").

*See* Plaintiffs' Motion for Post-Trial Discovery, ECF No. 543, at 1-2.[1]

But back in December 2022, the Court comprehensively denied Plaintiffs' initial request for an injunction. *See* R&R, ECF No. 174.[2] In terms of the RSU Plan, the Court denied Plaintiffs' injunction because "[n]ot only did the Bank's articles of association and bylaws authorize the board of directors to create and implement this plan, but Defendants were instructed by the OCC to establish a compensation scheme that would attract and retain talent at the Bank." *Id*. at 18. At trial, the unrebutted testimony confirmed these facts. *See, e.g.*, June 25, 2024 Trial Tr. at 116 (Mr. Macias testifying that "per the 2018 Consent Order," the Directors "had to devise a plan to retain and attract human capital, including officers and directors."); *id.* at p. 120-121 (Mr. Macias testifying that the Bank's Bylaws permit directors to fix compensation, enter into employment contracts, and manage the business affairs of the Bank). Same goes for the Court's prior ruling that an injunction should be denied because shareholder approval of the RSU Plan was not required, as there are no preemptive rights for the Bank's minority shareholders. *See* R&R, ECF No. 174, p. 18-19; *see also* June 12, 2024 Trial Tr. at 67-68 (Plaintiff's Corporate Representative, Juan B. Santaella, admitting that the Bank's shareholders do not "have any preemptive or preferential right[s]"). The same is also true for the Court's denial of an injunction based on the business judgment rule and its protection of the December 2021 vote to increase the available shares of ENB by 1 million. *See* R&R, ECF No. 174, at 19; *see also* June 25, 2024 Trial Tr. at 8 (K. Parker

---

[1] Plaintiffs Amended Motion for Preliminary Injunction is available at ECF No. 115. Defendants' Amended Brief in Opposition is available at ECF No. 132.

[2] For purposes of trial, Plaintiffs acknowledged these findings in Paragraph 55 of the Parties' Joint Pretrial Stipulation. ECF No. 345.

testifying that "it was absolutely necessary to have [1 million] additional number of shares approved" so that the bank could recapitalize).

At trial, the RSU Plan and the additional million shares were a feature of Plaintiffs' case.[3] In their case-in-chief, for example, Plaintiffs repeatedly questioned Mr. Ferreira, about both. *See, e.g.*, June 17, 2024 Trial Tr. at pp. 74, 168 ("Q. You weren't there when [the RSU Plan] was created?"; "Q: But [the RSU Plan] was offered to you in order to induce you to join the board of directors?"; "Q: And, two, you wanted the majority shareholder to approve the issuance of an extra million shares of bank stock. Right?")

Plaintiffs asked similar questions of Mr. Parker. *See, e.g.*, June 25, 2024 Trial Tr. at 61-62 ("Q: You could not have approved the RSU plan without the vote of Ms. Gabina Rodriguez. Right?"; "Q: The RSU plan allocates 300,000 shares, restricted stock units, to directors and employees. Right?"; "Q: The outstanding shares, the issued outstanding shares of Eastern National Bank before 2021 were 1,074,000 shares. Right?").

Mr. Macias also faced questions of a similar nature. *See, e.g.*, June 25, 2024 Trial Tr. at 158, 168-169 ("Q: And this is the document that you state you relied on to create the RSU plan. Right?"; "Q: Would you agree, Mr. Macias, that in the efforts to recapitalize the bank, a lot of prospective investors were deterred by the fact that the bank was under OFAC sanctions."; "Q: Mr. Macias, the bank has been trying to recapitalize for the last five to six years. Right?").

With the jury returning a verdict absolving Mr. Ferreira, Mr. Marker, and Mr. Macias of any liability, the Court should have little difficulty determining that Plaintiffs did not prevail at

---

[3] Curiously, Plaintiffs declined throughout the entirety of trial to ask a single question about the allegedly "independent" investors who agreed to put $2.5 million into Juan Santaella's own pocket if their recapitalization proposal were to have been accepted, or why the Bank declined to accept that proposal.

5

trial on the issues of the RSU Plan or the additional million shares.[4] OFAC clearly determined the same, as it was only **after** the jury reached its verdict in this case that OFAC signed off and approved each of these business decisions. *See* OFAC license dated July 3, 2024, attached as Exhibit A.

### B. PLAINTIFFS CANNOT DEMONSTRATE IRREPARABLE HARM

Fundamentally, the "basis of injunctive relief in the federal courts has always been irreparable harm[.]" *Sampson v. Murray*, 415 U.S. 61, 88 (1974). To demonstrate irreparable harm to the Bank, the injury described by Plaintiffs "must be neither remote nor speculative, but actual and imminent." *Id*.

Here, Plaintiffs seek to enjoin past acts that have become ingrained into the essence of the Bank. As a threshold matter, the Court should recognize that the RSU Plan was approved in December 2018, while the additional million shares were approved in December 2021. Currently, approximately thirty Bank employees have been awarded RSU "units", and each of them have for nearly six years working and toiling on behalf of all of the Bank's shareholders, and for less pay than they might have received elsewhere. Those employees have done so on the hope that one day those "units" would become effective and that the RSU Plan would make those efforts worthwhile.

Similarly, the Bank has been under a binding letter of intent to sell the additional million shares to an independent investor since February 2023. *See* June 25, 2024 Trial Tr. at 111. That letter of intent became a definitive sales agreement in September 2023. *Id*. The scope of the injunction sought affects not just the rights of the Defendants, but scores of Bank employees and other third-parties who have relied on those decisions for years.

---

[4] Whatever reasons the jury may have had for finding Mr. Rodriguez and Ms. Rodriguez liable had nothing to do with either issue, otherwise the verdict makes no sense.

In the Eleventh Circuit, when "a preliminary [or permanent] injunction goes beyond the status quo and seeks to force one party to act, it becomes a mandatory or affirmative injunction and the burden placed on the moving party is increased." *K.G. v. Dudek*, 839 F. Supp. 2d 1254, 1260 (S.D. Fla. 2011). Indeed, where "a mandatory injunction is sought, courts apply a heightened standard of review; plaintiff must make a clear showing of entitlement to the relief sought or demonstrate that extreme or serious damage would result absent the relief." *Verizon Wireless Pers. Communs. LP v. City of Jacksonville*, 670 F. Supp. 2d 1330, 1346 (M.D. Fla. 2009). Plaintiffs cannot meet that standard for two reasons.

*First*, the RSU Plan has already provided the Bank with at least three significant benefits. The unrebutted testimony is that the RSU Plan has been instrumental in: i) securing the continuing service of numerous employees, ii) enticing Bank Secrecy Act/Anti-Money Laundering specialists who helped resolved the OCC Consent Orders; and iii) attracting two new independent directors. *See* June, 25, 2024 Trial Tr. at 117 (Mr. Macias testifying that the "RSU program was a way to reward people that would stay with the bank through the difficult period that the bank was going through"); June, 24, 2024 Trial Tr. at 205 (Mr. Parker testifying that the Bank was "able to attract" the Bank's "chief compliance officer" because the RSU Plan "worked"); *id.* at pp. 209-210. There is no basis to conclude that the RSU Plan might irreparably harm the Bank.[5]

*Second*, the approval of the additional million shares is necessary for recapitalization and for a change in control of the Bank.[6] For almost four years the bank's regulators required

---

[5] A new investor, not ENB, will make any regulator-approved payments under the RSU Plan. *See, e.g.*, Exhibit A.

[6] Never have Plaintiffs adduced any evidence to support their theory that Defendants entered into a *quid pro quo* with Gabina Rodriguez to create the RSU Plan in exchange for looking the other way while she ran the Bank on behalf of the Venezuelan government. *See* R&R on Motion

recapitalization and a change in control. *See* 2020 Consent Order, Art. IV(8), at Compl., Ex. 2. Recapitalization is critical, and the current deal to sell the additional million shares will bring in approximately $32 million for the Bank. *See* June 25, 2024 Trial Tr. at 182. But those new investors want to own 2/3 of the bank, something called "supermajority control." *Id*. at 124-25. With Mercorp already owning 1 million shares, a new investor can only achieve supermajority control if they purchase the 1 million additional shares created back in 2011 **and** the additional 1 million shares created in December 2021. Clearly the Bank's regulators want the sale of the additional million shares to happen—there can be no other explanation for OFAC, almost immediately after the jury entered its verdict, approving the sale of the additional million shares at issue. *See* Exhibit A.

But Juan Santaella is greedy. Greed is the only conceivable reason for Plaintiffs continuing to oppose recapitalization, and Juan Santaella admitted as much during trial. *See* June 24, 2024 Trial Tr. at 68-69 (Juan Santaella testifying that he has "been thinking . . . since 1999" about "many plans" to get back Mercorp); *id.* at pp. 44-47 (Juan Santaella testifying that he would receive a finder's fee of "$2.5 million," which "was going to be paid to Finconsult in Panama, [his] personal company"); *see also* Letter of Intent between Plaintiffs and their preferred investor, ECF No. 528-29. Juan Santaella merely wants to cling to the hope that one day he will be able to take back control of Mercorp with its supermajority control still intact. That is why, as this case was pending and without approval from any court, Juan Santaella went to great lengths in an attempt to sell Mercorp's shares for $14.8 million. *See* Minutes of Corpofin's Board of Directors,

---

to Dismiss, ECF No. 67, at 9, 15, 17-20, and 21. Yet that theory has repeatedly harmed the Bank from a public relations standpoint.

ECF No. 528-38, at 1-2. But the personal monetary desires of Plaintiffs' sole beneficiary are not a proper basis for an injunction where the standard is actual and imminent harm to the Bank.

To be sure: Plaintiffs' request for a permanent injunction is unsound and would itself cause irreparable harm to the Bank, as it would preclude recapitalization. An injunction might put some money in Juan Santaella's pocket though, and that is all he has really ever cared about.

## II. A CONTINUANCE OF THE EVIDENTIARY HEARING SHOULD BE DENIED

The entirely of Plaintiffs' motion for a continuance is based on the unavailability of Adam Smith, their OFAC witness. But Mr. Smith testified at trial only weeks ago. Plaintiffs could have asked him, or Defendants' OFAC expert Britt Mosman, whatever Plaintiffs might have considered necessary to their claims. It was only after the jury returned a verdict in Defendants' favor that Plaintiffs raised the issue of bringing Mr. Smith back for yet another bite at the apple. Plaintiffs' own choice not to fully question Mr. Smith *at trial* about the Bank's OFAC licenses is not a basis to further delay a resolution of this matter, as Plaintiffs were well aware of the need to do so in order to prove their case. *See* R&R, ECF No. 174, at 12, fn. 4 ("OFAC confirmed in writing before the December 2021 shareholder meeting that voting Mercorp's shares would *not* violate the relevant OFAC license.") (emphasis in original). That is why the December 2021 shareholder meeting was a feature of Plaintiffs' case in chief.

A delay of this post-trial hearing to permit Plaintiffs a "do over" on these issues is neither justified nor warranted. *Compare* Plaintiffs' Motion for a Continuance, ECF No. 544 at p. 2 (claiming Mr. Smith will testify at a post-trial hearing "that Defendants did not have the proper authorization from [OFAC] to approve the issuance of additional ENB stock."), *with* June 17, 2024 Trial Tr. at pp. 216-223 (Mr. Ferreira testifying about receiving OFAC authorization in advance

9

of the December 2021 vote to approve the additional million shares; testimony given a full day before Mr. Smith testified at trial).

But there exists an even more basic reason to deny Plaintiffs' motion, because at this point Mr. Smith has nothing further of value to provide. After the jury entered its verdict, OFAC provided a license authorizing the sale of the additional million shares approved by Defendants in December 2021. *See* Exhibit A. The Court cannot now undue that license, as challenges to agency action must be brought in accordance with the Administrative Procedure Act. *See World Fuel Corp. v. Paulson*, Case No.: 07-CV-20398, 2008 U.S. Dist. LEXIS 139518 (S.D. Fla. March 31, 2008). Under the APA, a Court is only empowered to "set aside agency action, findings, and conclusions" if the agency's acts are "found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id*. at *5 (quoting *Sierra Club, Inc. v. Leavitt*, 488 F.3d 904, 911 (11th Cir. 2006)). And while there are a number of cases in which an ***applicant*** for an OFAC license has challenged the denial of a license, *see id*; *see also Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316 (D.C. Cir. 2009), there is no authority for the proposition that a ***non-party*** to a licensing decision would have standing to challenge the grant of that license under the APA.

### III.   POST-TRIAL DISCOVERY IS UNWARRANTED

On May 8, 2023, Defendants disclosed to the Court and to Plaintiffs that an "independent investor ha[d] pledged to acquire a controlling interest in ENB for approximately $32 million, which [was] around $16 million more than the highest bid ever submitted by" Plaintiffs and their potential co-investors. Decl. of Louis Ferreira, ECF No. 299-2, at ¶13. That was more than a year before trial commenced in June 2024.

There is no basis to, now that trial has concluded, allow Plaintiffs to "explore the supposed re-capitalization deal." ECF No. 543, p. 2. If they wanted to find out more "relevant information about this investor group," Plaintiffs had plenty of time to do so.

More importantly, Plaintiffs' claim that they need post-trial discovery because Plaintiffs did not know the name of this independent investor is false. Frivolously so. In their own brief dated December 20, 2023, Defendants referred to a "Notice of Change in Bank Control" that had been filed with the OCC. *See* Mot. for Sanctions ECF No. 439, at 10 and Ex. C thereto, ECF No. 439-3. That Notice identifies the investor group as "Fernando do Monasterio, Osvaldo Monasterio, Ernesto Monasterio and Carlos Krtzfeldt." *Id*. And that same notice provides that "[a]ny persons desiring to comment on this proposed acquisition should submit their written comments" to OFAC. *Id*. Critically, the license also states that "**A person who wishes to view the public files should submit a written request**" to OFAC, and provides physical and electronic mailing address.

As for the authenticity the Bank's OFAC license, Plaintiffs can easily verify its authenticity by calling OFAC's licensing division at 202-622-2480, or by emailing their myriad of contacts at the OCC. After all, in the days following the December 21, 2021 shareholders' meeting, ***and before filing the complaint***, Juan Santaella and his associates expressed to OFAC *every single one* of the concerns they now want the Court to reconsider.

> Mary Rasmussen, Deputy Assistant Director
> Licensing Division
> Office of Foreign Assets Control
> U.S Department of the Treasury
> 1500 Pennsylvania Avenue, NW
> Washington, D.C. 20220
>
> Dear Mrs. Rasmussen:
>
> I am *Counsel* to Bancor Group Inc., ("Bancor") a shareholder of Eastern National Bank. As you are aware, on June 25, 2021 the Bank/Licensee submitted an Application for an extension of its license and OFAC issued such license extension No. VENEZUELA EO138842020-368971-2, superseding license No. VENEZUELA EO138842020-368971-1, authorizing the Bank to (1) effectuating its recapitalization proposal, (2) effecting a change in control of the Bank, (3) otherwise securing the necessary capital injection for the Bank, as described in the Application(*how about the other license in place*).
>
> I submit to your consideration the need to grant Bancor the status as Whistleblower, in order to guarantee confidentiality of this complaint about potential *illegal* activity by the Board of Eastern National Bank. We submit to your consideration the fact that the Board of the Licensee, through its legal counsel (Holland & Knight) made considerable misrepresentations in the aforementioned application(*was it in that application or in requesting the email for shareholder meeting?*), in order to obtain an OFAC license.
>
> Bancor has strong evidence to suggest that the Board misrepresented the fundamental need for the license. In the interest of full disclosure, Bancor has partnered with a group of investors which made an offer to acquire a controlling stake in the Bank in exchange for a capital infusion of $15 million, and has already partially completed due diligence. This offer is adequate to recapitalize the bank, *does not requires from the bank to issue additional shares* and removes the conditions which gave rise to the cease-and-desist order by the Office of the Comptroller of the Currency (OCC). Instead, the Board has not responded formally to the proposal. Quite the

*See* Draft Correspondence attached as Exhibit B; *see also* Correspondence sent from Juan Santaella to Ms. Rasmussen on December 23, 2021, attached as Exhibit C (Plaintiffs produced that correspondence without attachments). Regardless, Plaintiffs' privilege log reveals Plaintiffs' clear belief and understanding that the OFAC-privilege would shield the documents now sought from being produced. *See* Privilege Log, highlighted and attached as Exhibit D, pp. 1, 4-5, 7, 10, 11, 13, 15. In any event, OFAC was well informed when it issued each and every specific license to the Bank, including the license issued immediately after the jury verdict in this matter.

Plaintiffs' argument that they "*will* be prejudiced if they are denied the opportunity to explore the supposed re-capitalization deal with the Monasterio Investor Group and the related [OFAC] license" is nonsensical and should be denied. This request should be viewed for what it is: the interests of Juan Santaella, a man who is determined to hold ENB hostage unless he gets what he wants and that is control of ENB, or a personal payout.

## CONCLUSION

Plaintiffs' request for a post-trial injunction, Plaintiffs' Motion for a Continuance (ECF No. 544), and Plaintiffs' Motion for Leave for Additional Discovery (ECF No. 543), should be denied.

Dated: July 22, 2024.

DIAZ REUS & TARG, LLP
100 Southeast Second Street
3400 Miami Tower
Miami, Florida 33131
Telephone: (305) 375-9220

By: /s/ *Evan J. Stroman*
Evan J. Stroman, Esq., CPA (Florida Bar No. 118929)
Attorney E-mail Address: estroman@diazreus.com
Brant C. Hadaway, B.C.S. (Florida Bar No. 494690)
Attorney E-mail Address: bhadaway@diazreus.com
Ibrahim Amir (Florida Bar No. 1005664)
Attorney E-mail Address: iamir@diazreus.com

*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY on July 22, 2024, the undersigned electronically filed the foregoing document with the Clerk of the Court using CM/ECF on all counsel of record upon:

Derek E. León, Esq.
Diego Perez Ara, Esq.
León Cosgrove, LLP
255 Alhambra Circle, 8th Floor
Miami, FL 33134
Email: dleon@leoncosgrove.com
Email: eperez@leoncosgrove.com
Email: dperez@leoncosgrove.com
Email: lburns@leoncosgrove.com

By: */s/* Evan J. Stroman
Evan J. Stroman, Esq., CPA